# EXHIBIT B

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

In Re Ex Parte Application of ) 
YOUNGPOONG CORPORATION for an Order Pursuant ) 
to 28 U.S.C. § 1782 to Take Discovery for Use in Foreign ) Civil Action No. 
Proceedings ) 
 ) 
 ) 

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To: PedalPoint Holdings, LLC, in accordance with Fed. R. Civ. P. 30(b)(6)

*(Name of person to whom this subpoena is directed)*

☑ **Testimony:** YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Schedule A

| Place: Jenner & Block, LLP<br>1155 Avenue of the Americas<br>New York, NY 10036 | Date and Time:<br>June 13, 2025 10:00am |
|---|---|

The deposition will be recorded by this method: Videographer and/or court reporter

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

  *CLERK OF COURT*

  OR

_____     _____
*Signature of Clerk or Deputy Clerk*         *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Youngpoong Corporation , who issues or requests this subpoena, are:

Brian Fischer, Jenner & Block, LLP, 1155 Avenue of the Americas, NY, NY, 10036, 212-891-1629, bfischer@jenner.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

[Print]  [Save As...]  [Add Attachment]  [Reset]

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

**Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)**

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# SCHEDULE A

**EXHIBIT A**

**DEFINITIONS AND INSTRUCTIONS**

In accordance with Federal Rule of Civil Procedure Rule 30(b)(6), You shall meet and confer in good faith about the matters for examination promptly following service of this notice, and designate as Your representative(s) one or more persons who consent to testify on your behalf about the Noticed Topics below. Each representative and the topics to which they will testify shall be designated in writing to counsel.

As used herein, the words set forth below shall be defined as follows:

1. "Acquisition" refers to the combined purchase by PedalPoint of the majority (73.1%) of Igneo's total shares on July 11, 2022 and the remainder (26.79%) of the shares of Igneo on November 23, 2022, following Board approval, making Igneo a wholly owned subsidiary of PedalPoint.

2. "Affiliates" means an entity's divisions, predecessors and successors in interest, subsidiaries, sister companies, and parents, and other entities owned in whole or in part by the same Beneficial Owner, or controlled by the same entity on behalf of multiple Beneficial Owners.

3. "Agents and Advisors" means the directors, officers, investment bankers, consultants, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on behalf of PedalPoint or Korea Zinc or subject to their control who prepared Documents or information with respect to or advised on the Acquisition, including: JP Morgan Chase Bank; Skadden, Arps, Slate, Meagher & Flom LLP; Rothschild & Co.; and Ramboll Group A/S.

4. "Agreements" means any and all agreements, including but not limited to contracts, side letters thereto, certifications, covenants, indemnification arrangements, forms of

1

release, promises, representations and/or warranties, schedules, unit purchase agreements, and waivers, including drafts and unsigned agreements, and specifically the final and first proposed version of the "Unit Purchase Agreement (Purchase of Class A-2 Units)" executed during the July 2022 transaction, the "Unit Purchase Agreement (Purchase of Class A-1 And Class B Units)" (the "Tarsadia UPA") executed as part of the executed during the July 2022 Transaction, the "Unit Purchase Agreement (Issuance of Class A-1 Units)," including the "Assignment and Assumption Agreement" enumerating the MCC Contracts, and the "Unit Purchase Agreement (Purchase Of Class A-2 Units)" executed during the November 2022 Transaction, including the schedules and exhibits thereto.

5. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

6. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

7. "ESI" means electronically stored information within the full scope of Rule 34 of the Federal Rules of Civil Procedure.

8. "Igneo" refers to PedalPoint Igneo Holdings, LLC, and its parents (including PedalPoint and Korea Zinc), subsidiaries, including PedalPoint Igneo Technologies, LLC, PedalPoint evTerra Recycling, LLC, Igneo (Georgia), and PedalPoint Igneo IP, LLC, affiliates, and any entities under its control and each of its current and former employees, executives, partners, directors (including any non-executive director), officers, investment bankers, consultants, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control, including any other entities in which the

Company had an ownership interest at any time from February 4, 2021 to present. Igneo is a Delaware Limited Liability Company and subsidiary of PedalPoint. Igneo was previously known as (among other things) Igneo Holdings, LLC and PedalPoint International, LLC.

9. "Igneo France" refers to Igneo France, SAS, a subsidiary of Igneo with a metal recovery furnace in Isbergues, France, and prior to acquisition was named WEE Metallica SAS.

10. "Igneo Georgia" refers to Igneo (Georgia) LLC, a Georgia Limited Liability Company and subsidiary of PedalPoint Igneo Holdings, registered as WSCR Technologies (Georgia), LLC from its registration on February 5, 2021 to April 23, 2021.

11. "July 2022 Transaction" refers to the purchase by PedalPoint of the majority (73.1%) of Igneo's total shares on July 11, 2022.

12. "Korea Zinc" refers to Korea Zinc Co., Ltd. (a publicly traded company in South Korea, in which Youngpoong has an ownership stake), its parents, subsidiaries, and any entities under its control and each of its current and former employees, executives, partners, directors (including any non-executive director), officers, investment bankers, consultants, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control, including any other entities in which the Company had an ownership interest at any time February 4, 2021 to present.

13. "MCC" refers to MCC NFT Holdings, Inc., a New York corporation, and its subsidiary MCC Non-Ferrous Trading LLC, its parents, subsidiaries, and any entities under its control, and each of its current and former employees, executives, partners, directors (including any non-executive director), consultants, officers, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control.

14. "MCC Contracts" refers to the 70 Assigned Contracts enumerated in Appendix A and the four Guaranteed Contracts enumerated in Appendix B of the Assignment and Assumption Agreement entered into on July 11, 2022, between MCC, Igneo, and PedalPoint Igneo Technologies, as well as any other Assigned Contract or Guaranteed Contract that was later disclosed in accordance with Item 71 of Appendix A or Item 5 of Appendix B.

15. "November 2022 Transaction" refers to the purchase by PedalPoint of the remainder (26.79%) of the shares of Igneo on November 23, 2022, making Igneo a wholly owned subsidiary of PedalPoint.

16. "PedalPoint" refers to PedalPoint Holdings LLC, a subsidiary of Korea Zinc and a Delaware Limited Liability Company registered on December 17, 2021, its parents, its subsidiaries, including PedalPoint Igneo Holdings, LLC, PedalPoint Igneo Technologies, LLC, PedalPoint evTerra Recycling, LLC, Igneo Georgia, and PedalPoint Igneo IP, LLC, affiliates, and any entities under its control and each of its current and former employees, executives, partners, directors (including any non-executive director), consultants, officers, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control, including any other entities in which the Company had an ownership interest at any time from February 4, 2021 to present.

17. "Related Party" refers to the "related party" (as such term is used in the 2021 audited financial statements of Igneo) that was the source of approximately 85 percent of the revenue of Igneo during the period covered by the 2021 audited financial statements.

18. "Selling Shareholders" means the entities, individual, companies, corporations, and funds that received payment upon the sale of Igneo.

19. The following rules of construction apply to all discovery requests:

      a.      The definitions and rules of construction set forth in Rule 34 of the Federal Rules of Civil Procedure and Local Rule 26.3 are hereby incorporated. Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

      b.      The terms "all," "any," and "each" must each be construed as encompassing any and all.

      c.      The connectives "and" and "or" must be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

      d.      The term "including" is used herein, it shall be construed to mean "including, but not limited to." Whenever the term "includes" is used, it shall be construed to mean "includes, but not limited to."

      e.      The use of the singular form of any word includes the plural and vice versa.

**NOTICED TOPICS**

1. All Documents produced by You to Youngpoong, and the method by which such Documents were identified, collected, and reviewed for production.

2. The role of Korea Zinc (including its directors and officers) in the governance and control of PedalPoint and its subsidiaries.

3. All facts and circumstances regarding the Acquisition, including communications that initiated the July 2022 Transaction and the November 2022 Transaction, the person (and capacity of such person) who first raised the idea of selling Igneo to Korea Zinc, the persons

5

involved in such initial communications, and the valuation (purchase price) negotiations, including the person who first proposed the valuation or purchase price for Igneo and the amounts thereof in both the July 2022 Transaction and the November 2022 Transaction.

4.   All Agreements of PedalPoint (or Korea Zinc of which PedalPoint is aware) relating to the Acquisition, including the July 2022 Transaction and the November 2022 Transaction, including any exhibits, schedules, disclosure schedules, side letters, oral agreements or disclosed or undisclosed agreements or understandings between PedalPoint (or Korea Zinc of which PedalPoint is aware) (on the one hand) and any of the former direct or indirect owners of Igneo (on the other hand).

5.   The forecasted sales or revenues, profit or losses, and EBITDA, of Igneo as of or created in anticipation of the July 2022 Transaction and the November 2022 Transaction, (i) as prepared by or on behalf of PedalPoint or (ii) as prepared by or on behalf of Igneo and shared with PedalPoint or its Agents and Advisors.

6.   Business plans, capital expenditure plans or similar Documents with respect to the business and operations of Igneo as of (or in connection with) the July 2022 Transaction and the November 2022 Transaction, (i) as prepared by or on behalf of PedalPoint or (ii) as prepared by or on behalf of Igneo and shared with PedalPoint or its Agents and Advisors.

7.   All Documents and information (including financial projections and business plans) prepared or relied upon by Igneo or PedalPoint when determining the valuation of Igneo in connection with the issuance of the May 2021 convertible promissory note, including any Documents and information received from the agents or advisors of Igneo, or shared with the purchaser of such notes.

8. All Documents and information prepared by or relied upon by PedalPoint when determining the valuation of Igneo in connection with the July 2022 Transaction and the November 2022 Transaction.

9. The evaluation or due diligence reports (financial, accounting, legal, environmental or otherwise) prepared for or by PedalPoint and its Agents and Advisors concerning the Acquisition.

10. The financial basis and assumptions for PedalPoint's valuations of Igneo, including any initial valuations (for both the July 2022 Transaction and the November 2022 Valuation), any revisions or modifications thereto, any final valuations (for both the July 2022 Transaction and the November 2022 Valuation), and PedalPoint's communications with Igneo about valuations during negotiations of the July 2022 Transaction and November 2022 Transaction.

11. The cause or explanation of any discrepancies between the 2021 audited financial statements and 2021 unaudited financial statements for Igneo, whether PedalPoint relied upon financial statements prior to the reporting of the 2021 audited financial statements prior to signing the July 2022 Transaction, why the 2021 audited financial statement was delayed until October of 2022, and any changes in financial forecasting in the year 2022, prior to and after the release of the 2021 audited financial statements and before the November 2022 Transaction.

12. The identity of the Related Party that accounted for almost all of the revenues of Igneo, as named in the 2021 audited financial statements of Igneo and a description of the nature of the transactions or services between the Related Party and Igneo, including any Agreements between Igneo and the Related Party in respect to such transactions, any due diligence performed on the Related Party by PedalPoint, and information about whether the revenues from the Related

Party reported on the Igneo financial statements (and transactions with the Related Party) were used to artificially inflate the value of Igneo.

13. The roles that Yun Birm Choi, Jin-soo Noh, and Ki-Deok Park had in initiating, negotiating or authorizing the Acquisition, including the July 2022 Transaction and the November 2022 Transaction.

14. Any financial interest or incentives of Yun Birm Choi with respect to the Acquisition, including any potential or actual conflicts of interest; any personal financial benefits he (or other directors, officers, employees or owners of Korea Zinc) received directly or indirectly as a result of the Acquisition, including the July 2022 Transaction and November 2022 Transaction and any relationship, direct or indirect, of himself (or any other such related parties) to the Selling Shareholders.

15. The value of the MCC Contracts; the impact of those contracts on Your decision making concerning the Acquisition; the consideration that MCC received for the transfer of the MCC Contracts; the business rationale for such contracts being initially made with MCC and why Igneo did not (or could not) directly enter into competing or alternative contracts with the ultimate customers; whether MCC performed any substantive work under such contracts, and whether Igneo performed substantially all of the services required under such contracts prior to such transfer; profit and loss statements (and any other financial information) provided to PedalPoint or its Agents and Advisors) that show the revenues and expenses of MCC associated with such contracts, or that show the profitability of such contracts; information on whether such contracts were terminable on short notice or at will by the ultimate customers, or otherwise obligated the customers thereunder to purchase services; and any legal due diligence reports received by PedalPoint in respect to such contracts.

16. The utilization of $150 million (less specified transactions deductions) transferred from Korea Zinc (via PedalPoint) to Igneo in connection with the July 2022 Transaction, including whether or not the uses of such funds conformed to the contractual obligations of Igneo under the unit purchase agreement with PedalPoint, and any transfer of such proceeds to the Selling Shareholders, directly or indirectly.

17. The management representation letter sent by Igneo to its auditor in connection with the fiscal year 2021 audited financial statements, which supported the conclusion that its net operating loss (NOL) was valued at zero ($0), given the financial statements conclude that its net operating loss had no going-forward value, and thus no future profits of Igneo were expected.

18. Igneo's budgets and business plans to build a recycling or processing plant in Georgia, whether in Savannah, Atlanta, or elsewhere; that facility's planned location, size and capacity; the cause, rationale and timing of cancellation of such development efforts; the Performance & Accountability Agreement (Georgia Incentive Programs) among Savannah Economic Development Authority, the Georgia Department of Community Affairs, and the administering agency for the One Georgia Authority, Igneo Georgia, and MCC; the effects of the cancellation on Igneo's value and financial forecasts; lost investment in the facility; plans to replace the facility in Georgia or elsewhere; and/or plans and budgets to construct a "hub-and-spoke" system for waste collection and recycling in the United States.

19. Your preparation for this deposition, including any documents reviewed, Communications with persons knowledgeable about the designated topics, and other steps taken to prepare the designated witness(es).