# EXHIBIT B

# Criminal Complaint

| | |
|---|---|
| **Case** | Violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Occupational Breach of Trust) |
| **Complainant** | Youngpoong Corporation |
| **Accused Persons** | Yun Birm Choi, Jin-soo Noh |



Complainant's Representative

Law Firm KL Partners

Attorneys in Charge: Kim Beom-soo, Lee Neung-kyu, Lee Seong-hoon, Park Ki-seong

To the Honorable Seoul Central District Prosecutors' Office

Phone (Direct): 6226-7725 (Attorney Park Ki-seong), kspark@klpartners.com (Attorney Park Ki-seong)
Fax: 6226-7800

# Criminal Complaint

**Complainant**     Youngpoong Corporation
542, Gangnam-daero, Gangnam-gu, Seoul (Nonhyeon-dong)

Complainant's Representative Law Firm KL Partners
17th Floor, East Tower, Signature Tower, 100 Cheonggyecheon-ro, Jung-gu, Seoul
Attorneys in Charge: Kim Beom-soo, Lee Neung-kyu, Lee Seong-hoon, Park Ki-seong
(Phone: +82-2-6226-7700, Fax: +82-2-6226-7800)

**Accused Persons**   1.  Yun Birm Choi
Address: 109-101, 111 Dokseodang-ro, Yongsan-gu, Seoul (Hannam The Hill, Hannam-dong)

2.  Jin-soo Noh
1108-1202, 143 Gwanmun-ro, Gwacheon-si (Raemian Eco Palace, Jungang-dong)

**Charge(s)**       Violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Occupational Breach of Trust)

## Purpose of the Complaint

The complainant company, Youngpoong Corporation (hereinafter referred to as **"Complainant Company"**), hereby files a criminal complaint against the accused for violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Occupational Breach of Trust). We request a thorough investigation and, if the charges are substantiated, strict punishment in accordance with the law.

## Statement of Criminal Facts

The accused Yun Birm Choi is currently serving as the Chairman and an inside director of Korea Zinc Inc (hereinafter referred to as **"Korea Zinc"**), and has previously served as the Representative Director of Korea Zinc from March 22, 2019, to March 19, 2024. The accused Jin-soo Noh served as the Representative Director of Korea Zinc from March 24, 2021, to March 17, 2023. (Reference Material 1-1: Korea Zinc's Certificate of Corporate Registration)

**1. Occupational Breach of Trust in Relation to Korea Zinc's Investments**

The accused, Yun Birm Choi and Jin-soo Noh, as Representative Directors of Korea Zinc, have a duty, in accordance with applicable laws and the company's articles of incorporation, to carefully assess Korea Zinc's financial situation and any potential losses resulting from their actions when making investment decisions. They are obligated to refrain from making unreasonable investment decisions that could cause harm to the company for the purpose of pursuing personal gain or benefiting a third party.

## A. Occupational Breach of Trust in Relation to Investments in Private Equity Funds Managed by One Asia Partners

The accused, Yun Birm Choi, made investment decisions in a total of eight private equity funds (hereinafter referred to as "**Funds in Question**"), managed by One Asia Partners Co., Ltd. (hereinafter referred to as "**One Asia Partners**"), which serves as the general partner of institutional private collective investment vehicles under the Financial Investment Services and Capital Markets Act (hereinafter referred to as the "**Capital Markets Act**"). These investment decisions were made over eight instances from October 18, 2019, to June 2, 2023, with a total book value of approximately KRW 500 billion as of the end of June 2023. The accused, Jin-soo Noh, together with the accused, Yun Birm Choi, made investment decisions in four of these funds over four instances from August 10, 2021, to February 15, 2023. The accused were obligated, as part of their fiduciary duties, to carefully assess Korea Zinc's financial situation and any potential losses resulting from such actions before making investment decisions on behalf of Korea Zinc.

Nevertheless, the accused violated their fiduciary duties and, without careful review, arbitrarily decided to invest approximately KRW 500 billion in One Asia Partners, where Yun Birm Choi's acquaintance, Chang-bae Ji, serves as Representative Director. As a result of this investment, Korea Zinc suffered a loss of approximately KRW 51.1 billion as of the end of 2023.[1]

## B. Occupational Breach of Trust in Relation to Igneo Investment

The accused, in their capacity as Representative Directors of Korea Zinc, made the decision on July 11, 2022, to acquire 125,851 newly issued shares of the U.S. entity Igneo Holdings, LLC (hereinafter referred to as "**Igneo**") through Pedalpoint Holdings, LLC (hereinafter referred to as "**Pedalpoint**"), a wholly owned U.S. subsidiary of Korea Zinc. This acquisition represented approximately 73.21% of Igneo's total issued shares, with a purchase price of KRW 432,406,279,798. Subsequently, on November 23, 2022, the accused made a further decision to acquire 40,687 shares (approximately 26.79%, purchase price KRW 149,552,045,326), thereby securing 100% ownership of Igneo's issued shares (hereinafter referred to as "**Overseas Investment in Question**"). The accused were obligated, during each of these periods, to carefully assess Korea Zinc's financial condition and the potential risk of losses resulting from these transactions before making investment decisions on behalf of the company.

---

[1]  Furthermore, as a result of this investment decision, one of the funds in which Korea Zinc invested—Havana No. 1 Private Equity Investment Limited Partnership (hereinafter referred to as "**Havana No. 1**")—has recently come under suspicion of manipulating stock prices by acquiring approximately 2.9% of the shares of SM Entertainment Co., Ltd. (hereinafter referred to as "**SM**") during the public tender offer conducted by HYBE Co., Ltd. (hereinafter referred to as "**HYBE**"). Consequently, depending on the outcome of this matter, Korea Zinc may also face potential liability for damages under the Capital Markets Act due to alleged stock price manipulation.

Nevertheless, the accused breached their fiduciary duty by deciding, on July 11, 2022, to acquire 125,851 newly issued shares (approximately 73.21%, purchase price KRW 432,406,279,798) of Igneo, despite the fact that, as of the end of 2021, Igneo was in a state of complete capital impairment. Subsequently, on November 23, 2022, the accused decided to acquire an additional 40,687 shares (approximately 26.79%, purchase price KRW 149,552,045,326), ultimately investing a total of KRW 580 billion to acquire 100% of Igneo's issued shares. As a result of this transaction, Korea Zinc suffered financial losses equivalent to the investment amount of KRW 580 billion, less the residual value of Igneo, while Igneo and its shareholders received financial benefits in an equivalent amount.

## 2. Occupational Breach of Trust in Relation to Contracts with CS Design Group[2]

The accused, in their capacity as Representative Directors of Korea Zinc, were obligated, pursuant to applicable laws and the company's articles of incorporation, to exercise due diligence in reviewing the appropriateness of counterparties and transaction terms before deciding whether to enter into contracts on behalf of Korea Zinc. They were further obligated to ensure that contracts were not entered into arbitrarily or in pursuit of personal or third-party interests in a manner that could cause financial harm to the company.

Nevertheless, without obtaining approval from the board of directors, the accused entered into various interior design contracts with CS Design Group between 2021 and 2023. As a result, Korea Zinc suffered financial damages, including, (1) the difference between the actual amounts paid to CS Design Group and the amounts that would have been paid had the contracts been concluded on fair and reasonable terms; (2) potential fines imposed on Korea Zinc under the Monopoly Regulation and Fair Trade Act (hereinafter referred to as the "**Fair Trade Act**") if the transactions are deemed to constitute unfair trade practices prohibited under the Act; and (3) tax-related financial losses arising from transactions conducted under improper conditions, should they be deemed to have been carried out on unfair terms.

## Statement of Complaint Grounds

### 1. Relationship Between the Parties

Korea Zinc was established on August 1, 1974, with its primary business purpose being the refining of mineral resources and the manufacture and sale of zinc ingots and other by-products. The accused, Yun Birm Choi, is currently serving as the Chairman and an inside director of Korea Zinc. He previously held the position of Representative Director from March 22, 2019, to March 19, 2024. The accused, Jin-soo Noh, served as the Representative Director of Korea Zinc from March 24, 2021, to March 17, 2023 (Reference Material 1-1: Korea Zinc's Certificate of Corporate Registration).

---

[2] On July 12, 2024, CS Design Group Co., Ltd. changed its corporate name to 'The Boundary Co., Ltd.' (hereinafter, for convenience, referred to as "**CS Design Group**"). It is known that Lee Jung-sook, the former Representative Director of CS Design Group, is a sister-in-law of the accused, Yun Birm Choi.

The Complainant Company is the largest shareholder of Korea Zinc, holding 5,186,797 shares, which constitute approximately 25.40% of Korea Zinc's total issued shares (20,703,283 shares in total) (Reference Material 1-2: Korea Zinc's Report on Changes in Major Shareholder Ownership, dated August 27, 2024).

## 3.  Case Background

### A.  The Accused's Investment in the Funds in Question and the Resulting Losses to Korea Zinc

According to Korea Zinc's semi-annual report dated August 14, 2023, Korea Zinc invested approximately KRW 500 billion in the Funds in Question, which are managed by One Asia Partners, a general partner of institutional private collective investment vehicles under the Capital Markets Act, per the book value as of the end of June 2023. The details of these investments are as follows (Reference Material 2-1: Extract from Korea Zinc's Semi-Annual Report, dated August 14, 2023):

[Korea Zinc's Investment in One Asia Partners]

| Fund Name | Investment Date | Korea Zinc Shareholding (%) | Investment Amount (KRW 100M) |
|---|---|---|---|
| Korea Growth No. 1 Private Equity Investment L.P. | 2019.10.18 | 94.64 | 713.1 |
| Arbitrage No. 1 Private Equity Investment L.P. | 2020.09.21 | 54.59 | 406 |
| Justice No. 1 Private Equity Investment L.P. | 2021.03.18 | 99.20 | 499 |
| Violet No. 1 Private Equity Investment L.P. | 2021.08.10 | 87.30 | 777 |
| Tangerine No. 1 Private Equity Investment L.P. | 2022.02.16 | 99.38 | 955 |
| Gray No. 1 Private Equity Investment L.P. | 2022.08.29 | 99.64 | 1,100 |
| Havana No. 1 Private Equity Investment L.P. | 2023.02.15 | 99.82 | 496.1[3] |
| Mangosteen No. 1 Private Equity Investment L.P. | 2023.06.02 | 39.92 | 61.7 |
| Total | | | 5,007.9 |

However, these private equity investments by Korea Zinc are highly questionable. The companies reportedly invested in by One Asia Partners' funds—Arc Media Co., Ltd. (media business),

---

[3]  The initial investment amount in Havana No. 1 was approximately KRW 101.6 billion (Reference Material 2-2: Extract from Korea Zinc's Semi-Annual Report, dated August 14, 2023).

Tide Square Co., Ltd. (travel business), and Jeongseok Enterprise Co., Ltd. (building management business)—have no direct relevance to Korea Zinc's core business operations.

Furthermore, despite committing thousands of billions of KRW to multiple funds managed by a single general partner (One Asia Partners), the accused, Yun Birm Choi and Jin-soo Noh, proceeded with these investments without board approval, making decisions solely at the discretion of the Representative Director. Notably, Chang-bae Ji, the Representative Director of One Asia Partners, has been known as a close friend of the accused, Yun Birm Choi, since childhood (Reference Material 3-1: Korea Economic Daily article, dated August 1, 2024). Additionally, One Asia Partners was established in March 2019, immediately after Yun Birm Choi assumed office as Korea Zinc's Representative Director, raising a reasonable suspicion that Yun Birm Choi funneled substantial corporate funds into private equity investments solely for the benefit of his close friend (Reference Material 3-2: Certificate of Corporate Registration for One Asia Partners).

Moreover, Do-hyun Kim, Outside Director and Audit Committee Member of Korea Zinc, served as an executive and outside director at Chungho ICT Co., Ltd. for eight years from March 7, 2008, to March 4, 2016. During the same period, Chang-bae Ji held executive positions, including CEO, at Chungho ICT from March 16, 2007, to August 28, 2020. Given that they worked together as executives at Chungho ICT for eight years, it is evident that there was a pre-existing relationship between them (Reference Material 4: Partial Certificate of Corporate Registration for Chungho ICT (Dissolution Record)). This strongly suggests that the accused intentionally bypassed board and audit oversight to approve these investments unilaterally.

Even more concerning is that One Asia Partners is currently under criminal investigation for stock price manipulation during HYBE's public tender offer for SM Entertainment shares. One Asia Partners allegedly used its private equity funds to acquire approximately 2.9% of SM shares, thereby engaging in stock price manipulation. Additionally, Chang-bae Ji has been indicted and is currently on trial for violations of the Capital Markets Act and the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Embezzlement) (Reference Material 5-1: Seoul Economic Daily article, dated April 15, 2024).[4]

Furthermore, it has been revealed that Havana No. 1, to which Korea Zinc initially contributed approximately KRW 100 billion, was used to purchase SM shares at inflated prices and engage in stock price manipulation. In particular:

a. According to Korea Zinc's business report, Korea Zinc's initial acquisition date of Havana No. 1 shares was February 15, 2023 (Reference Material 5-2: Extract from Korea Zinc's Business Report, dated March 28, 2024, p. 10). This date is only five days after HYBE submitted its public tender offer report for SM on February 10, 2023 (Reference Material 5-3: HYBE Corporation's Public Tender Offer Report, dated February 10, 2023).
b. The discussions between Kakao and One Asia Partners regarding stock price manipulation aimed at obstructing HYBE's tender offer likely took place after HYBE submitted its public tender offer report on February 10, 2023.
c. Typically, in blind funds, investors make capital contributions within a period of at least 7 days to 15 days after receiving a capital call from the general partner. However, Korea Zinc's investment in Havana No. 1 occurred just five days after HYBE submitted its tender offer report. This strongly suggests that One Asia Partners made an exceptional and urgent capital call request.

---

[4] In or around 2019, Representative Director Ji Chang-bae admitted to misappropriating KRW 10.4 billion from fund assets to repay personal debts and for other unauthorized uses, thereby committing breach of trust and embezzlement (Reference Material 5-4: News1 article, dated July 5, 2024).

    d.   Korea Zinc contributed the majority of Havana No. 1's capital.

    e.   On February 16, 2023—just one day after Korea Zinc's investment—One Asia Partners began acquiring SM shares through its managed private equity funds (Reference Material 5-5: Seoul Economic Daily article, dated October 20, 2023).

    f.   The investment was made abruptly, shortly before stock accumulations that appear to have been aimed at manipulating the stock price.

These facts strongly indicate that Chang-bae Ji had prior discussions with the accused, Yun Birm Choi, regarding the urgent need for funding and the reasons for such urgency, and requested an investment into Havana No. 1. Moreover, when Yun Birm Choi authorized Korea Zinc's investment in Havana No. 1, he was fully aware that the funds would be used for One Asia Partners' stock price manipulation of SM shares.

Furthermore, according to recent media reports, testimony presented during the trial of Chang-bae Ji confirmed that the accused, Yun Birm Choi, and Beom-soo Kim had met and praised the achievements of Jae-hyun Bae[5], Kakao Corp.(hereinafter referred to as the "**Kakao**")'s Head of Investment, who played a key role in Kakao's acquisition of SM (Reference Material 5-6: News Tomato article, dated July 9, 2024).

Considering the above circumstances, it is evident that the accused, Yun Birm Choi, made the decision to invest in Havana No. 1 to assist Kakao or One Asia Partners in manipulating SM's stock price, which was against the best interests of Korea Zinc.

The Funds in Question are classified as institutional private collective investment vehicles under the Capital Markets Act. However, an analysis of their composition indicates that Korea Zinc provided the majority of their funding. It is highly unusual for a single company to supply the majority of the capital for multiple funds managed by a single general partner. Additionally, unlike typical private equity funds, which liquidate investments by selling shares and distributing cash proceeds, Havana No. 1, Justice No. 1 Private Equity Investment L.P. (hereinafter referred to as "**Justice No. 1**"), and Tangerine No. 1 Private Equity Investment L.P. (hereinafter referred to as "**Tangerine No. 1**") distributed shares instead of cash during the liquidation process. Such a practice deviates from standard private equity fund operations, raising concerns that the liquidation was an attempt to destroy relevant records.

According to Korea Zinc's business report, several private equity funds managed by One Asia Partners have already been liquidated, causing Korea Zinc to incur significant investment losses, as detailed below (Reference Material 6-1: Extract from Korea Zinc's Business Report, dated March 28, 2024):

[Investment Losses Incurred by Korea Zinc Due to Investments in One Asia Partners]

| Fund Name | Liquidation Details and Investment Losses |
|---|---|
| Justice No.1 Private Equity Investment Limited Partnership | - Liquidated, and Korea Zinc received in-kind dividends of Jungseok Enterprise stocks worth KRW 45,632,600,000 and Jungseok Enterprise stock-based derivatives worth KRW 2,757,651,000.<br>- Korea Zinc incurred an investment loss of approximately KRW 1.5 billion. |
| Tangerine No.1 Private | - Liquidated, and Korea Zinc received a cash dividend of KRW |

---

[5] For reference, Bae Jae-hyun has already been indicted on charges related to stock price manipulation involving SM Entertainment (Reference Material 5-1: Seoul Economic Daily article, dated April 15, 2024).

| Fund Name | Liquidation Details and Investment Losses |
|---|---|
| Equity Investment Limited Partnership | 4,968,783,000 and in-kind dividends of Tide Square stocks worth KRW 90,531,217,000. |
| Havana No.1 Private Equity Investment Limited Partnership | - Liquidated, and Korea Zinc received a capital redemption of KRW 52,044,451,000 and in-kind dividends of SM stocks worth KRW 40,098,240,000.[6]<br>- Korea Zinc incurred an investment loss of approximately KRW 9,521,071,000. |
| Gray No.1 Private Equity Investment Limited Partnership | - Not liquidated, but Korea Zinc incurred an investment loss of approximately KRW 13,616,772,000. |
| Violet No.1 Private Equity Investment Limited Partnership | - Not liquidated, but Korea Zinc incurred an investment loss of approximately KRW 12,047,265,000. |

## B. Accused's Investment in Igneo and Resulting Losses for Korea Zinc

On July 11, 2022, Korea Zinc, through its wholly-owned U.S. subsidiary, Pedalpoint, acquired 125,851 new shares (approximately 73.21%) of the U.S. company Igneo for KRW 432,406,279,798. On November 23, 2022, Korea Zinc acquired an additional 40,687 shares (approximately 26.79%) for KRW 149,552,045,326, thereby acquiring 100% of Igneo's issued shares (hereinafter referred to as the "**Overseas Investment in Question**"). [Reference Material 7-1: Korea Zinc's Disclosure on Acquisition of Shares and Equity Securities of Another Corporation (Major Management Matters of a Subsidiary), dated July 11, 2022; Reference Material 7-2: Korea Zinc's Disclosure on Acquisition of Shares and Equity Securities of Another Corporation (Major Management Matters of a Subsidiary), dated November 23, 2022; Reference Material 7-3: Korea Zinc's Disclosure on Acquisition of Shares and Equity Securities of Another Corporation, dated July 11, 2022.] This investment was primarily decided by the accused, who were serving as Korea Zinc's executives at the time.

However, there was a significant discrepancy between Igneo's financial status as disclosed at the time of Korea Zinc's initial stock acquisition on July 11, 2022 (capital of approximately KRW 10.6 billion, total equity of approximately KRW 11 billion, revenue of approximately KRW 63.7 billion, and net profit of approximately KRW 3.2 billion) and its actual financial status revealed after the completion of its audit at the end of December 2021 (total equity of approximately KRW -1.873 billion, revenue of approximately KRW 2.871 billion, and net profit of approximately KRW -4.785 billion). Given that a thorough financial due diligence process must have been conducted before proceeding with an M&A transaction worth hundreds of billions of KRW, it is difficult to understand why the accused proceeded with the acquisition despite the substantial discrepancies in financial figures, unless they had ulterior motives.

Furthermore, according to the disclosure dated July 11, 2022, Igneo's financial situation as of the end of December 2021 was stated to be undergoing an audit that was scheduled to be completed by the end of July 2022. By the time the board resolution was passed on November 23, 2022, several

---

[6]  As a result of the liquidation of Havana No. 1, the SM shares acquired in the process experienced a price decline from KRW 91,000 per share as of December 21, 2023, to KRW 58,000 per share as of September 20, 2024, leading to an estimated valuation loss of approximately KRW 14.5 billion.

months had passed since the audit's conclusion, meaning the accurate financial condition of Igneo as of the end of December 2021 should have been known. Given this, the accused would have been aware that Igneo was in a state of complete capital impairment. Nevertheless, they decided to acquire the remaining 26.79% stake at an even higher price per share (approximately USD 2,708.7) than the price paid during the initial acquisition on July 11, 2022 (approximately USD 2,645.6 per share). The decision to purchase the remaining 26.79% stake at a higher price, despite already securing a 73.21% majority stake—thereby excluding any control premium—while knowing that Igneo was in a state of complete capital impairment, cannot be considered an act fulfilling the fiduciary duty.

Furthermore, as of the end of December 2023, the financial status of Pedalpoint, the parent company of Igneo, had deteriorated significantly, with its assets decreasing by approximately KRW 30 billion, liabilities increasing by approximately KRW 8 billion, a net loss of approximately KRW 53 billion, and comprehensive income of approximately KRW -41.5 billion. Moreover, the management decisions carried out after the acquisition of Igneo raise further suspicions. In October 2021, a year before its acquisition by Korea Zinc, Igneo had pledged to invest USD 85 million to establish an electronic waste recycling facility in Savannah, Georgia, USA. However, after Korea Zinc acquired Igneo, the company withdrew its investment from Georgia around June 2023 (Reference Material 7-4: The Korea Times article, dated August 28, 2024). In addition, during the acquisition process, Korea Zinc acquired new shares of Igneo for approximately KRW 200 billion, stating that this amount would be used for the construction of Igneo's smelting plant, as well as for building waste collection and processing facilities across the U.S. and Mexico through its subsidiary EvTerra. Korea Zinc also announced an investment plan to expand the number of smelting plants in the U.S. to three by February 2023. However, to date, the only additional investments executed by Igneo have been in four EvTerra waste collection and processing facilities. Even these facilities appear to have required minimal capital, as they were merely existing warehouse buildings leased and equipped with waste processing machinery (Reference Material 7-5: Atlanta News article, dated August 29, 2024). Despite securing KRW 200 billion in new investment funds, Igneo has withdrawn its planned investments and has failed to properly execute its announced investment plans. The management conduct of Igneo, under these circumstances, strongly suggests that the accused's decision to invest in Igneo cannot be explained without the involvement of some underlying scheme.

As a result of these investment decisions by the accused, Korea Zinc suffered an indeterminate amount of losses, amounting to the portion of its approximately KRW 580 billion investment that exceeds the remaining corporate value of Igneo.

## C. Interior Design Contracts with CS Design Group and Resulting Losses for Korea Zinc

There are allegations that Korea Zinc entered into multiple interior design contracts with CS Design Group, a company suspected to be operated by the accused Yun Birm Choi's relative (sister-in-law) (Reference Material 8: Women's Economic Newspaper article, dated July 14, 2024). CS Design Group reportedly secured nearly exclusive contracts for interior-related projects from Korea Zinc within less than a year of its establishment, leading to rapid growth. Specifically, CS Design Group was responsible for interior work on Korea Zinc's Nonhyeon-dong headquarters, as well as the construction, design, and interior work of the headquarters of Zinc Oxide Corporation, a subsidiary of Korea Zinc. Additionally, CS Design Group secured contracts for the construction and interior design of various facilities at Korea Zinc's Onsan Smelter, including a parking building, an integrated security building, a safety training center, a health center, a safety control center, and a commuter bus stop. It was also confirmed that CS Design Group handled the design of the headquarters of Steel

Cycle, another Korea Zinc subsidiary. Moreover, CS Design Group's website[7] lists several Korea Zinc affiliates, including KZAM, Seorin Trading, Zinc Oxide Corporation, Korea Precursor, Korea Nickel, Kemco, and Steel Cycle, as its clients. Furthermore, according to the article cited earlier, CS Design Group's revenue surged from KRW 1.04 billion in 2022 to KRW 3.16 billion in 2023—an almost threefold increase in just one year. During the same period, its assets grew from KRW 780 million to KRW 1.44 billion, and its operating profit increased from KRW 700 million to KRW 820 million.

According to Article 45, Paragraph 1, Subparagraph 9 of the Fair Trade Act, a business entity must not provide undue support to related parties or other companies by offering services or transactions under significantly favorable terms. Given the circumstances, Korea Zinc's dealings with CS Design Group appear to constitute unfair trade practices prohibited by the Fair Trade Act. Additionally, if Korea Zinc engaged in transactions with a company run by Yun Birm Choi's relative under unfair terms, it may also face financial losses under tax regulations.

Ultimately, due to the accused's decisions to enter into contracts with CS Design Group, Korea Zinc suffered financial losses amounting to:

1. The excess amount paid beyond what would have been paid under a fair contract,
2. Potential fines Korea Zinc may incur if the transactions are found to constitute unfair trade practices under the Fair Trade Act, and
3. Potential tax-related losses if the transactions are deemed to have been conducted under unfair conditions.

## 3. Establishment of the Crime of Occupational Breach of Trust (Embezzlement) by the Accused

### A. Relevant Legal Principles

The crime of Occupational Breach of Trust occurs when a person responsible for managing another's affairs acts in violation of their duty, thereby obtaining financial benefits for themselves or a third party while causing financial losses to the principal (Articles 355(2) and 356 of the Criminal Act).[8]

### B. Status as a Person Managing Another's Affairs

In the context of breach of trust, a "person managing another's affairs" refers to an individual who, in their internal relationship with the principal, is recognized as having a fiduciary duty to manage the principal's affairs in good faith. It is not necessary for this individual to have formal authority over those affairs in external dealings with third parties, nor is it required that the entrusted

---

[7] Following media reports and ongoing investigations into allegations of unfair preferential transactions, CS Design Group's official website has been taken down and is currently inaccessible.

[8] According to Article 3, Paragraph 1, Subparagraph 2 of the Act on the Aggravated Punishment of Specific Economic Crimes, a person who commits the crime of breach of trust and, as a result of such criminal act, acquires or causes a third party to acquire property or pecuniary benefits valued between KRW 500 million and KRW 5 billion, shall be subject to a fixed-term imprisonment of not less than three years.

affairs be broadly defined. The basis for this fiduciary duty may arise from statutory provisions, legal transactions, customary practices, or even the management of another's affairs without explicit authorization (Supreme Court Decision 2003.2.26, 2002Do6834).

In particular, the Supreme Court has ruled that "a director of a stock corporation is appointed by the general meeting of shareholders, and the relationship between the company and the director is governed by the provisions of delegation. A director is required to faithfully perform their duties for the company in accordance with laws and the company's articles of incorporation. Therefore, under statutory provisions, a director of a stock corporation qualifies as a 'person managing another's affairs' and can be held criminally liable for breach of trust." (Supreme Court Decision 2002.4.9, 99Do2165).

At the time, the accused served as representative directors of Korea Zinc. Based on the aforementioned Supreme Court rulings, they qualify as "persons managing another's affairs" under the law and can therefore be held liable for the crime of Occupational Breach of Trust in the course of their professional responsibilities.

## C. Acts in Violation of Occupational Duty

In the context of the crime of breach of trust, an "act in violation of duty" refers to any conduct that betrays the fiduciary relationship with the principal by failing to take actions that should have been expected based on legal provisions, contractual obligations, or the principle of good faith, or by taking actions that should have been avoided (Supreme Court Decision 2004.3.12, 2004Do520).

Under the Commercial Act, directors and auditors must exercise due care as prudent managers in the execution of their duties (Article 382(2), Article 415). They must objectively conduct business in a manner that a reasonable and prudent person would consider to be in the best interest of the company. The Supreme Court has ruled that "directors have a duty to prevent financial damage to the company and must faithfully perform their duties in a manner that maximizes the best interests of the company. If a director violates this duty by managing business affairs for their own benefit or the benefit of a third party, thereby causing damage to the company, such conduct constitutes a violation of duty under the crime of breach of trust." (Supreme Court Decision 2013.7.11, 2011Do5337; Supreme Court Decision 2009.10.15, 2009Do5655).

1) As CEOs of Korea Zinc, the accused had a legal and fiduciary duty to carefully assess investment decisions by evaluating the company's financial position and potential losses. They were prohibited from making unreasonable investment decisions that could cause damage to the company for personal or third-party interests.

However, as previously explained, the investments in the Funds in Question were made to benefit Chang-bae Ji, One Asia Partners, and Kakao rather than Korea Zinc, under conditions where board and audit committee oversight was effectively neutralized. Additionally, the Overseas Investment in Question involved committing approximately KRW 580 billion to a company in a state of complete capital impairment, despite the obligation to conduct thorough financial due diligence before making such an investment. Investment in these funds and the Overseas Investment in Question resulted in significant losses for Korea Zinc. Therefore, the accused's actions constitute a violation of their fiduciary duty as Representative Directors of Korea Zinc and qualify as acts in violation of duty under the crime of Occupational Breach of Trust.

2) Accused Yun Birm Choi and Jin-soo Noh, as Representative Directors of Korea Zinc, had a legal and fiduciary duty to carefully assess counterparties and contract terms to ensure that Korea

Zinc entered into fair agreements. They were prohibited from entering into unreasonable contracts that could harm the company for personal or third-party gain.

However, as previously explained, CS Design Group was operated by Yun Birm Choi's relative, necessitating a heightened level of scrutiny to ensure fairness. Despite this, the accused arbitrarily entered into interior design contracts with CS Design Group, leading Korea Zinc to engage in transactions that violated the Fair Trade Act and tax laws. Furthermore, the contract terms were unfair to Korea Zinc or overly favorable to CS Design Group, causing Korea Zinc to incur financial losses compared to a scenario in which contracts had been executed under fair conditions. Therefore, the accused's actions constitute a violation of their fiduciary duty as Representative Directors of Korea Zinc and qualify as acts in violation of duty under the crime of Occupational Breach of Trust.



### D. Financial Losses Incurred by Korea Zinc

In the context of the crime of Breach of Trust, "causing financial loss" includes not only actual financial damage but also cases where there is a risk of financial loss. Moreover, once the risk of financial loss has been created, the subsequent recovery of damages does not affect the establishment of the crime of Breach of Trust (Supreme Court Decision 2000.12.8, 99Do3338).

As explained earlier, due to the fund investments in question, Korea Zinc suffered a total loss of KRW 51.2 billion, calculated as follows:

- Justice No.1-related investment loss: KRW 1.5 billion
- Havana No.1-related investment loss: KRW 9.5 billion
- Gray No.1 Private Equity Investment Limited Partnership-related investment loss: KRW 13.6 billion
- Violet No.1 Private Equity Investment Limited Partnership-related investment loss: KRW 12 billion
- Loss from in-kind dividend of SM stocks: KRW 14.5 billion

Additionally, due to the Overseas Investment in Question, Korea Zinc suffered an indeterminate amount of financial loss equivalent to the portion of its approximately KRW 580 billion investment that exceeds the residual value of Igneo.

Furthermore, as a result of the interior design contracts with CS Design Group, Korea Zinc incurred financial losses amounting to:

1. The difference between the actual amount paid to CS Design Group and the amount that would have been paid under a fair contract,
2. Potential fines that Korea Zinc may have to bear if the transactions are deemed to constitute unfair trade practices under the Fair Trade Act, and
3. Potential tax-related losses if the transactions are found to have been conducted under unfair conditions.

### 4. Jurisdiction

Article 3(4) of the Prosecutors' Office Act stipulates that "the jurisdiction of each level of prosecutors' offices and branch offices shall correspond to the jurisdiction of courts and district court

branches at each level." Additionally, Article 4(1) of the Criminal Procedure Act states that "territorial jurisdiction is determined by the crime scene, the Accused 's address, residence, or current location."

  The acts committed by the accused, as stated in this complaint, all took place at Korea Zinc's headquarters. At the time, Korea Zinc's headquarters was located at 142 Nonhyeon-dong, Gangnam-gu, Seoul (Reference Materials 1-1: Korea Zinc's Certificate of Corporate Registration). Therefore, this case falls under the jurisdiction of the Seoul Central District Prosecutors' Office, as the competent prosecution office for the crime scene (Gangnam-gu).

## 5. Conclusion

  As outlined above, the accused, who were appointed as Representative Directors of Korea Zinc in 2019 and 2021, respectively, violated their fiduciary duties as Representative Directors and engaged in actions detrimental to the interests of Korea Zinc and its shareholders. As the largest shareholder of Korea Zinc, the complainant has witnessed the accused's managerial misconduct since the appointment of Yun Birm Choi as Representative Director and subsequently became aware of the criminal acts committed by the accused. Consequently, the complainant has filed this criminal complaint based on the foregoing facts.

  Accordingly, the complainant files this criminal complaint against the accused for violations of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Breach of Trust) and requests a thorough investigation into the accused. If their criminal liability is established, the complainant urges that they be subject to the full extent of the law and face strict legal consequences.

  Additional factual details and supporting evidence will be provided during the complainant's testimony or through separate submissions.

## Reference Materials

1. Exhibit 1-1: Korea Zinc's Certificate of Corporate Registration
2. Exhibit 1-2: Korea Zinc's Report on Changes in Major Shareholder Ownership, dated August 27, 2024
3. Exhibit 2-1: Extract from Korea Zinc's Semi-Annual Report, dated August 14, 2023
4. Exhibit 2-2: Extract from Korea Zinc's Semi-Annual Report, dated August 14, 2023
5. Exhibit 3-1: *Korea Economic Daily* article, dated August 1, 2024
6. Exhibit 3-2: Certificate of Corporate Registration for One Asia Partners
7. Exhibit 4: Partial Certificate of Corporate Registration for Chungho ICT (Dissolution Record)
8. Exhibit 5-1: *Seoul Economic Daily* article, dated April 15, 2024
9. Exhibit 5-2: Extract from Korea Zinc's Business Report, dated March 28, 2024
10. Exhibit 5-3: HYBE Corporation's Public Tender Offer Report, dated February 10, 2023
11. Exhibit 5-4: *News1* article, dated July 5, 2024
12. Exhibit 5-5: *Seoul Economic Daily* article, dated October 20, 2023
13. Exhibit 5-6: *News Tomato* article, dated July 9, 2024
14. Exhibit 6-1: Extract from Korea Zinc's Business Report, dated March 28, 2024
15. Exhibit 6-2: *Liberty Korea Post* article, dated March 25, 2024
16. Exhibit 7-1: Korea Zinc's Disclosure on Acquisition of Shares and Equity Securities of Another Corporation (Major Management Matters of a Subsidiary), dated July 11, 2022

17. Exhibit 7-2: Korea Zinc's Disclosure on Acquisition of Shares and Equity Securities of Another Corporation (Major Management Matters of a Subsidiary), dated November 23, 2022
18. Exhibit 7-3: Korea Zinc's Disclosure on Acquisition of Shares and Equity Securities of Another Corporation, dated July 11, 2022
19. Exhibit 7-4: *The Korea Times* article, dated August 28, 2024
20. Exhibit 7-5: *Atlanta News* article, dated August 29, 2024
21. Exhibit 8: *Women's Economic Newspaper* article, dated July 14, 2024

---

## Attached Documents

1. Copies of the above reference materials (one copy each)
2. Power of Attorney for Legal Representation (one copy)
3. Certificate of Designation of Attorneys in Charge (one copy)



---

September 25, 2024


Complainant's Legal Representative
Law Firm KL Partners

Attorney Kim Beom-su
Attorney Lee Neung-gyu
Attorney Lee Seong-hun
Attorney Park Gi-seong

To the Honorable Seoul Central District Prosecutors' Office



# BERING LAB INC

**CERTIFICATION OF TRANSLATION**

We certify that the Korean to English translation of "[2-2. (Kor)_Criminal Complaint_Filed_Sept 25_2024]" is an accurate and complete rendering of the contents of the source document to the best of our knowledge and ability.

Date: April 11, 2025

21, Baekbeom-ro 31-gil, Mapo-gu, Seoul, Republic of Korea
BERING LAB



[별지 제41호서식]

Registered No.    2025  —  11078

# NOTARIAL CERTIFICATE



**HANSUBOK
NOTARY PUBLIC OFFICE**

38, Jong-ro 3-gil, Jongno-gu, Seoul, Korea

TEL :  +82  2  756  3300

FAX :  +82  2  756  4300

[별지 제45호서식]

위 번역문은 원문과 상위 없음을 서약합니다.

2025 년 04 월 14 일

서약인　우창하 

I swear that the attached translation is true to the original.

14 . Apr , 2025

Signature

---

등부　2025 년 제 11078 호

## 인　　증

위 우 창 하 ----------- 은 본 공증인의 면전에서 위 번역문이 원문과 상위 없음을 확인하고 서명날인하였다.

\- - - - - - - - - - - - - - - - - - - - - - - - -

\- - - - - - - - - - - - - - - - - - - - - - - - -

2025 년 04 월 14 일

이 사무소에서 위 인증한다.

### 공증인 한수복 사무소

소 속 서울중앙지방검찰청
소재지표시
서울 종로구 종로3길 38
4층 403호(청진동,진학회관)

한　수　복

### 공증인 한 수 복

본 사무소는 인가번호 제211호에 의거하여 2019년 07월 29일 법무부 장관으로부터 공증인 업무를 행할 것을 인가 받았다.

Registered No    2025 – 11078

## Notarial Certificate

WOO, CHANG HA         personally appeared before me, confirmed that the attached translation is true to the original and subscribed his(her) name.

\- - - - - - - - - - - - - - - - - - - - - - - - -

\- - - - - - - - - - - - - - - - - - - - - - - - -

This is hereby attested on this 14th  day of  Apr  2025  at this office.

### HANSUBOK NOTARY PUBLIC OFFICE

Belong to Seoul Central
        District Prosecutor's Office
38, Jong-ro 3-gil, Jongno-gu, Seoul, Korea
4F 403(Cheongjin-dong, Jinhak-hoegwan)

Signature of the Notary Public

### HAN, SUBOK

This office has been authorized by the Minister of Justice, the Republic of Korea, to act as Notary Public Since 29, Jul. 2019 Under Law No.211.

# 고　소　장

사　　　건　　　특정경제범죄가중처벌등에관한법률위반(업무상 배임)

고 소 인　　　주식회사 영풍

피고소인　　　최윤범, 노진수



고소인의 대리인

법무법인 케이엘파트너스
담당변호사 김범수, 이능규,
이성훈, 박기성

서울중앙지방검찰청　귀중

전화(직통) : 6226-7725(변호사 박기성),  kspark@klpartners.com(변호사 박기성)
팩시밀리 : 6226-7800

 **법무법인 케이엘파트너스**　　　　서울 중구 청계천로 100 (수표동 99) 시그니처타워 동관 17층 04542
전화 02-6226-7700    팩스 02-6226-7800

# 고 소 장

고 소 인      주식회사 영풍

　　　　　　서울 강남구 강남대로 542(논현동)


　　　　　　고소인의 대리인 법무법인 케이엘파트너스

　　　　　　서울 중구 청계천로 100 시그니쳐타워 동관 17층

　　　　　　담당변호사  김범수, 이능규, 이성훈, 박기성

　　　　　　(전화: 02-6226-7700, 팩스: 02-6226-7800)



피고소인    1. 최 윤 범

　　　　　　　서울 용산구 독서당로 111, 109동 101호(한남동, 한남더힐)


　　　　　　2. 노 진 수

　　　　　　　과천시 관문로 143, 1108동 1202호(중앙동, 레미안 에코팰리스)


죄      명    특정경제범죄가중처벌등에관한법률위반(업무상 배임)

## 고 소 취 지

　　고소인 주식회사 영풍(이하 '고소인 회사'라 합니다)은 피고소인들을 특정경제범죄가중처벌등에관한법률위반(업무상 배임) 혐의로 고소하오니 철저히 수사하시어 혐의가 인정될 경우 엄중 처벌하여 주시기 바랍니다.

 법무법인 케이엘파트너스　　　서울 중구 청계천로 100 (수표동 99) 시그니쳐타워 동관 17층 04542
전화 02-6226-7700  팩스 02-6226-7800

범 죄 사 실

피고소인 최윤범은 현재 고려아연 주식회사(이하 '고려아연'이라 합니다)의 회장 및 사내이사로 재직 중이며, 2019. 3. 22.부터 2024. 3. 19.까지 고려아연의 대표이사로 재직한 자입니다. 피고소인 노진수는 2021. 3. 24.부터 2023. 3. 17.까지 고려아연의 대표이사로 재직한 자입니다(참고자료 1의 1 고려아연 등기사항전부증명서).

## 1. 고려아연의 투자와 관련한 업무상 배임 행위

피고소인 최윤범, 노진수는 고려아연의 대표이사로서 법령과 정관의 규정에 따라 고려아연의 경제적인 상황이나 그 행위로 인한 손실발생 등을 신중하게 검토하여 고려아연의 투자결정을 하여야 하고, 개인적인 이익 및 제3자의 이익을 추구하기 위하여 회사에 손해를 초래할 수 있는 이유 없는 투자 결정을 하여서는 아니될 업무상 임무가 있습니다.

### 가. 원아시아파트너스가 운용하는 사모펀드에 대한 투자 관련 업무상 배임 행위

피고소인 최윤범은 2019. 10. 18.부터 2023. 6. 2.까지 총 8회에 걸쳐 자본시장과 금융투자업에 관한 법률(이하 '자본시장법'이라 합니다)상 기관전용사모집합투자기구의 업무집행사원인 원아시아파트너스 주식회사(이하 '원아시아파트너스'라 합니다)가 운용하는 총 8개의 사모펀드(이하 '이 사건 펀드들'이라 합니다)에 2023. 6. 말 장부가액 기준으로 5,000억원 상당을 투자하는 결정을 하였으며, 피고소인 노진수는 그 중 4개의 펀드들에 대하여 2021. 8. 10.부터 2023. 2. 15.까지 총 4회에 걸쳐 피고소인 최윤범과 함께 투자를 결정하였는바, 피고소인들은 위 투자 결정과

2 / 21

관련하여 고려아연의 경제적인 상황이나 그 행위로 인한 손실발생 등을 신중하게 검토하여 고려아연의 투자 여부를 결정하여야 할 업무상 임무가 있습니다.

그럼에도 불구하고 피고소인들은 업무상 임무를 위배하여 신중한 검토 없이 독단적으로 피고소인 최윤범의 지인인 지창배가 대표이사로 있는 원아시아파트너스에 5,000여억원을 투자하였으며, 이와 같은 투자로 인하여 고려아연은 2023년말 기준으로 약 511억원의 손해를 입었습니다.[1]

### 나. Igneo 투자 관련 업무상 배임 행위

피고소인들은 고려아연의 대표이사로서 2022. 7. 11. 고려아연의 완전자회사인 미국법인 Pedalpoint Holdings, LLC(이하 'Pedalpoint'라고 합니다)를 통하여 미국법인 Igneo Holdings, LLC(이하 'Igneo'라 합니다)의 신주 125,851주(약 73.21%, 취득가액 432,406,279,798원)를 취득하는 결정을 하였고, 2022. 11. 23.에는 40,687주(약 26.79%, 149,552,045,326원)를 취득하여 Igneo의 발행주식 100%를 취득(이하 '이 사건 해외투자'라 합니다)하는 결정을 하였는바, 피고소인들은 위 각 기간동안 고려아연의 경제적인 상황이나 그 행위로 인한 손실발생 등을 신중하게 검토하여 고려아연의 투자 여부를 결정하여야 할 업무상 임무가 있습니다.

그럼에도 불구하고 피고소인들은 2022. 7. 11. 고려아연의 완전자회사인 미국법

---

[1] 나아가 이와 같은 투자 결정으로 인하여 고려아연이 투자한 펀드 중 하바나제 1 호 사모투자합자회사(이하 '하바나 1 호'라 합니다)가 최근 ㈜하이브(이하 '하이브'라 합니다)의 ㈜SM 엔터테인먼트(이하 'SM'이라 합니다) 주식 공개 매수 당시 SM 주식 2.9% 상당을 사들이며 주식시세를 조종하였다는 혐의를 받게 되었는바, 그 결과에 따라 고려아연은 자본시장법상 시세조종에 따른 배상책임을 부담하게 될 가능성마저 존재하게 되었습니다.

법무법인 케이엘파트너스    서울 중구 청계천로 100 (수표동 99) 시그니처타워 동관 17층 04542    전화 02-6226-7700    팩스 02-6226-7800

인 Pedalpoint를 통하여 2021년말 기준으로 완전자본잠식상태에 빠져 있는 미국법인 Igneo의 신주 125,851주(약 73.21%, 취득가액 432,406,279,798원)를 취득하기로 결정하였고, 2022. 11. 23.에는 40,687주(약 26.79%, 149,552,045,326원)를 추가로 취득하기로 결정하여 총 5,800억원을 투자하여 Igneo의 발행주식 100%를 취득하였고, 이로 인하여 고려아연은 투자금 약 5,800억원에서 Igneo의 잔존 회사가치를 제외한 금액 상당의 손해를 입고 Igneo 및 그 주주는 동액 상당의 재산상 이익을 얻었습니다.

## 2. ㈜씨에스디자인그룹[2]과의 계약에 관련한 업무상 배임 행위

피고소인들은 고려아연의 대표이사로서 법령과 정관의 규정에 따라, 계약 체결의 상대방 및 거래조건이 적정한지 여부를 신중하게 검토하여 고려아연의 계약 체결 여부를 결정하여야 하고, 개인적인 이익 및 제3자의 이익을 추구하기 위하여 회사에 손해를 초래할 수 있는 이유 없는 계약을 체결하여서는 아니될 업무상 임무가 있습니다.

그럼에도 불구하고, 피고소인들은 이사회 결의도 없이 2021년부터 2023년에 걸쳐 씨에스디자인그룹과 사이에 각종 인테리어 계약을 체결하였으며, 이로 인하여 고려아연에게 (1) 실제 씨에스디자인그룹에 지급한 금액과 공정한 내용의 계약을 체결하였다면 지불하였을 금액의 차액 상당의 금액, (2) 독점규제 및 공정거래에 관한 법률(이하 '공정거래법'이라 합니다)상 금지되는 불공정거래행위가 인

---

[2] ㈜씨에스디자인그룹은 2024. 7. 12. 사명을 '주식회사 더바운더리'로 변경하였습니다. 이하 편의상 '씨에스디자인그룹'이라 합니다. 씨에스디자인그룹의 과거 대표이사였던 이정숙은 피고소인 최윤범의 처형에 해당하는 인물로 알려져 있습니다.

정되는 경우 고려아연이 부담하게 될 과징금 및 (3) 부당한 조건으로 거래하는 것으로 인정되는 경우 발생하는 세법상 손실액 상당의 재산상 손해를 가하였습니다.

고 소 이 유

**1. 당사자들의 관계**



　　고려아연은 1974. 8. 1. 광산물 제련에 의한 아연과 기타 부산물의 제조 판매 등을 주된 목적으로 설립된 회사입니다. 피고소인 최윤범은 현재 고려아연의 회장 및 사내이사로 재직 중이며, 2019. 3. 22.부터 2024. 3. 19.까지 대표이사로 재직한 자입니다. 피고소인 노진수는 2021. 3. 24.부터 2023. 3. 17.까지 고려아연의 대표이사로 재직한 자입니다(참고자료 1의 1 고려아연 등기사항전부증명서).

　　고소인 회사는 고려아연 발행주식 5,186,797주(고려아연 발행주식 총수 20,703,283주의 약 25.40%에 해당합니다)를 소유한 최대주주입니다(참고자료 1의 2 고려아연 2024. 8. 27.자 최대주주소유주식변동신고서).

**2. 이 사건의 경위**

**가. 피고소인들의 이 사건 펀드들에 대한 투자 및 그로 인한 고려아연의 손실**

　　고려아연의 2023. 8. 14.자 반기보고서에 의하면, 고려아연은 자본시장법상 기관전용사모집합투자기구의 업무집행사원인 원아시아파트너스가 운용하는 이 사건 펀드들에 2023. 6.말 장부가액 기준으로 5,000여억원 상당을 투자하였으며, 그 구

 **법무법인 케이엘파트너스**　　서울 중구 청계천로 100 (수표동 99) 시그니쳐타워 동관 17층 04542
전화 02-6226-7700　　팩스 02-6226-7800

체적인 내역은 아래와 같습니다(참고자료 2의 1 고려아연㈜ 2023. 8. 14.자 반기보고서 발췌).

**[고려아연의 원아시아파트너스에 대한 투자 내역]**

| 펀드 명 | 투자일 | 고려아연 지분율 | 고려아연 투자금(억) |
|---|---|---|---|
| 코리아그로쓰제1호사모투자합자회사 | 2019. 10. 18. | 94.64 | 713.1 |
| 아비트리지제1호사모투자합자회사 | 2020. 9. 21. | 54.59 | 406 |
| 저스티스제1호사모투자합자회사 | 2021. 3. 18. | 99.20 | 499 |
| 바이올랫제1호사모투자합자회사 | 2021. 8. 10. | 87.30 | 777 |
| 텐저린제1호사모투자합자회사 | 2022. 2. 16. | 99.38 | 955 |
| 그레이제1호사모투자합자회사 | 2022. 8. 29. | 99.64 | 1,100 |
| 하바나제1호사모투자합자회사 | 2023. 2. 15. | 99.82 | 496.1[3] |
| 망고스틴제1호사모투자합자회사 | 2023. 6. 2. | 39.92 | 61.7 |
| 합계 | | | 5,007.9 |

그러나 고려아연의 이와 같은 사모펀드 투자는 도저히 이해하기 어렵습니다. 원아시아파트너스의 사모펀드들이 투자하고 있는 것으로 알려진 회사는 미디어 관련 사업을 영위하는 주식회사 아크미디어, 여행 관련 사업을 영위하는 주식회사 타이드스퀘어, 빌딩 관리 사업을 영위하고 있는 정석기업 주식회사 등인데, 이들은 고려아연의 영업과는 아무런 연관이 없는 회사들입니다.

더구나 고려아연은 위와 같이 수천억 원에 달하는 막대한 자금을 단일한 하나의 업무집행사원이 운용하는 펀드에 출자하였음에도 불구하고, 위 출자에 관하여 피고소인 최윤범, 노진수는 이사회 결의를 거치지 아니하고 대표이사만의 결정에 따라 진행하였습니다.  이와 관련하여 원아시아파트너스의 대표이사인 지창

---

[3] 하바나1호의 최초 투자금액은 약 1,016억원입니다(참고자료 2의 2 고려아연 ㈜ 2023. 8. 14.자 반기보고서 발췌).

**법무법인 케이엘파트너스**

서울 중구 청계천로 100 (수표동 99) 시그니쳐타워 동관 17층 04542
전화 02-6226-7700   팩스 02-6226-7800

배와 피고소인 최윤범은 어려서부터 절친한 친구 사이인 것으로 알려져 있으며 (참고자료 3의 1 한국경제 2024. 8. 1.자 기사), 피고소인 최윤범이 고려아연의 대표 이사로 취임한 2019. 3. 직후에 원아시아파트너스가 설립되었다는 점 등을 더하여 보면(참고자료 3의 2 원아시아파트너스 등기사항전부증명서) 피고소인 최윤범이 자신의 절친한 친구를 위하여 고려아연의 사업과는 아무런 관련이 없는 사모펀드에 회사의 막대한 자금을 몰아주었다는 합리적 의문을 피할 길이 없습니다.

나아가, 고려아연의 사외이사이자 감사위원인 김도현은 주식회사 청호아이씨티에서 2008. 3. 7.부터 2016. 3. 4.까지 8년간 이사, 사외이사로 근무하였고, 지창배는 위 청호아이씨티에서 2007. 3. 16.부터 2020. 8. 28.까지 이사, 사내이사, 대표이사로 근무하였는바, 위 둘은 위 청호아이씨티에서 임원으로 8년간 함께 근무한 사이이기도 합니다[참고자료 4 주식회사 청호아이씨티 등기사항일부증명서(폐쇄사항)]. 이러한 피고소인 최윤범, 김도현, 지창배의 관계를 고려하면, 피고소인들은 이사회 및 감사위원회의 감시기능을 무력화시키고 자신들의 독단적인 결정만으로 이 사건 펀드들에 대한 투자를 결정하였음을 충분히 짐작할 수 있을 것입니다.

심지어, 원아시아파트너스는 최근 하이브의 SM 주식 공개 매수 당시 원아시아파트너스가 운용하고 있는 사모펀드를 동원하여 SM 주식 2.9% 상당을 사들이며 주식시세를 조종하였다는 혐의를 받고 있으며, 원아시아파트너스의 지창배 대표는 자본시장법 위반 및 특정경제범죄 가중처벌 등에 관한 법률(횡령) 혐의로 구속기소 되어 현재 재판이 진행중입니다(참고자료 5의 1 서울경제 2024. 4. 15.자 기사).[4]

---

[4] 지창배 대표는 2019 년경 펀드 자금 104 억원을 빼돌려 개인 채무를 갚는 등 유용한 행위(배임 및 횡령)를 인정하기도 하였습니다(참고자료 5 의 4 뉴스1 2024. 7. 5.자 기사).

법무법인 케이엘파트너스     서울 중구 청계천로 100 (수표동 99) 시그니처타워 동관 17층 04542
전화 02-6226-7700    팩스 02-6226-7800

이에 더하여 고려아연이 최초투자시 약 1,000억원 상당의 자금을 출자한 하바나1호의 경우, SM 주식 고가 매수 및 시세조종에 활용된 사실이 밝혀진 바 있습니다. 특히 (i) 고려아연의 사업보고서에 따르면 고려아연의 하바나1호 지분 최초 취득일이 2023. 2. 15.이라고 기재되어 있는데(참고자료 5의 2 고려아연㈜ 2024. 3. 28.자 사업보고서 발췌 10쪽), 이는 하이브가 SM에 대한 공개매수신고서를 제출한 2023. 2. 10.로부터 불과 5일 뒤의 일입니다(참고자료 5의 3 주식회사 하이브 2023. 2. 10.자 공개매수신고서). 또한 (ii) 하이브의 공개매수를 무산시키기 위한 카카오와 원아시아파트너스 간의 시세조종 논의는 하이브의 공개매수신고서가 제출된 시점인 2023. 2. 10. 이후일 것이라는 점, (iii) 통상 블라인드 펀드에 있어서 투자자의 출자 시기는 업무집행사원으로부터 출자 요청(Capital Call)을 받은 날로부터 짧더라도 7일, 길면 15일 정도인데 고려아연이 하이브의 공개매수신고서 제출 시점으로부터 불과 5일 후인 2023. 2. 15. 하바나1호에 출자를 하기 위하여서는 원아시아파트너스의 예외적인 요청이 있었을 것이라는 점, (iv) 고려아연이 하바나1호의 자금 대부분을 출자하였다는 점, (v) 실제로 원아시아파트너스는 고려아연의 출자 다음 날인 2023. 2. 16.부터 산하 사모펀드들을 통하여 SM 주식을 매집하기 시작한 점(참고자료 5의 5 서울경제 2023. 10. 20.자 기사), (vi) 주가조작 목적의 주식 매집 직전에 갑작스럽게 투자가 진행되었다는 점 등을 보면, 지창배는 피고소인 최윤범에게 출자의 긴급한 필요성과 사유에 대하여 사전에 설명하고 하바나1호에 대한 출자를 요청하였고, 피고소인 최윤범은 하바나1호에 출자할 당시 고려아연의 출자금이 원아시아파트너스의 SM 주식에 대한 시세조종에 사용될 것임을 알고 있었음이 분명합니다.

나아가 최근 언론기사에 따르면, 지창배에 대한 공판에서 피고소인 최윤범과

**KL 법무법인 케이엘파트너스**    서울 중구 청계천로 100 (수표동 99) 시그니처타워 동관 17층 04542
전화 02-6226-7700    팩스 02-6226-7800

김범수가 만나 ㈜카카오(이하 '카카오'라고 합니다)의 SM 인수를 주도하였던 카카오 투자총괄 대표인 배재현[5]의 성과를 칭찬하였다는 내용의 진술이 있었음이 확인됩니다(참고자료 5의 6 뉴스토마토 2024. 7. 9.자 기사).

이상과 같은 사정을 종합하여 보면, 피고소인 최윤범이 하바나1호에 투자하기로 결정한 행위는 카카오 또는 원아시아파트너스의 SM 주식 시세조종행위에 도움을 주기 위한 것으로 고려아연의 이익에 반하는 것임을 알 수 있습니다.

이 사건 펀드들은 자본시장법상 기관전용 사모집합투자기구에 해당하며, 그 펀드의 구성을 보면 고려아연이 대부분의 자금을 투입한 것으로 나와 있습니다. 하나의 업무집행사원이 운용하는 다수의 펀드들에 단일한 회사가 대부분의 자금을 투입하는 경우는 매우 이례적인 일입니다. 또한, 통상적인 사모펀드는 주식을 처분하여 투자금을 회수한 후 현금을 배분하는데, 하바나1호, 저스티스제1호사모투자합자회사(이하 '저스티스1호'라 합니다) 및 텐저린제1호사모투자합자회사(이하 '텐저린1호'라 합니다)는 청산 과정에서 주식을 처분하여 현금을 배분하지 않고 투자한 주식 자체를 현물로 배당하였던바, 이는 통상적인 사모펀드 운용방식과 전혀 다릅니다. 이는 해당 회사를 속히 청산함으로써 관련 자료를 폐기하려는 시도가 아닌가 의심됩니다.

고려아연의 사업보고서에 의하면, 원아시아파트너스가 운용하고 있는 사모펀드 중 상당수가 청산되었는데, 이에 따라 고려아연은 각 펀드마다 수십 억에서 수백 억원 상당의 투자손실을 입었으며, 그 구체적 내역은 아래와 같습니다(참고

---

[5]참고로, 배재현은 SM 시세조종 의혹으로 먼저 기소된 바 있습니다(참고자료 5의 1 서울경제 2024. 4. 15.자 기사).

자료 6의 1 고려아연㈜ 2024. 3. 28.자 사업보고서 발췌본).

### [고려아연의 원아시아파트너스에 대한 투자로 인한 손실 내역]

| 펀드 명 | 청산 내역 및 투자 손실 |
|---|---|
| 저스티스제1호<br>사모투자합자회사 | - 청산되었으며, 고려아연은 금 45,632,600,000원 상당의 정석<br>기업 주식 및 금 2,757,651,000원 상당 정석기업 주식기반<br>파생상품을 현물배당 받음.<br>- 고려아연은 15억원 상당 투자손실이 발생함. |
| 텐저린제1호<br>사모투자합자회사 | - 청산되었으며 고려아연은 금 4,968,783,000원 상당 현금배<br>당과 금 90,531,217,000원 상당 타이드스퀘어 주식을 현물<br>배당 받음. |
| 하바나제1호<br>사모투자합자회사 | - 청산되었으며 고려아연은 금 52,044,451,000원 출자환급 받<br>고 금 40,098,240,000원 상당의 SM주식을 현물배당 받음.[6]<br>- 고려아연은 금 9,521,071,000원 상당 투자손실이 발생함. |
| 그레이제1호<br>사모투자합자회사 | - 청산되지 않았으나, 고려아연은 금 13,616,772,000원 상당<br>투자손실이 발생함. |
| 바이올렛제1호<br>사모투자합자회사 | - 청산되지 않았으나, 고려아연은 금 12,047,265,000원 상당<br>투자손실이 발생함. |

### 나. 피고소인들의 Igneo에 대한 투자 및 그로 인한 고려아연의 손실

고려아연은 2022. 7. 11. 고려아연의 완전자회사인 미국법인 Pedalpoint를 통하여 미국법인 Igneo의 신주 125,851주(약 73.21%, 취득가액 432,406,279,798원)를 취득하였고, 2022. 11. 23.에는 40,687주(약 26.79%, 149,552,045,326원)를 취득하여 Igneo의 발행주식 100%를 취득(이하 '이 사건 해외투자'라 합니다)하였습니다[참고자료 7의 1 고려아연㈜ 2022. 7. 11.자 타법인주식및출자증권취득결정(종속회사의주요경영

---

[6] 하바나1호의 청산에 따라 취득한 SM 주식의 주가는 2023. 12. 21.자를 기준으로 91,000원에서 2024. 9. 20. 기준 58,000원으로 하락하여 약 145억원 상당의 평가손실을 입게 되었습니다.

법무법인 케이엘파트너스    서울 중구 청계천로 100 (수표동 99) 시그니처타워 동관 17층 04542<br>전화 02-6226-7700  팩스 02-6226-7800

사항), 참고자료 7의 2 고려아연㈜ 2022. 11. 23.자 타법인주식및출자증권취득결정 (종속회사의주요경영사항), 참고자료 7의 3 고려아연㈜ 2022. 7. 11.자 타법인주식및 출자증권취득결정]. 위와 같은 투자는 고려아연의 대표이사로 있던 피고소인들이 주도적으로 결정하였습니다.

그런데 2022. 7. 11. Igneo 주식 최초 취득 시 공시에 드러난 Igneo의 재무 현황 (자본금 약 106억원, 자본총계 약 110억원, 매출액 약 637억원, 당기순이익 약 32 억원)과 Igneo의 2021. 12.말 회계감사가 종료된 후 드러난 재무 현황(자본총계 약 -18.73억원, 매출액 약 28.71억원, 당기순이익 약 -47.85억원) 사이에는 지나치게 큰 차이가 존재합니다. 수 천억원의 M&A를 하면서 대상회사 재무정보에 대한 실사를 분명히 하였을 것인데, 재무 수치가 이렇듯 크게 차이가 남에도 주식취 득을 강행하였다는 것은 피고소인들에게 어떤 다른 의도가 있지 않는 한 납득하 기 어려운 것입니다.

나아가, 2022. 7. 11.자 공시에 따르면 Igneo의 2021. 12.말 재무상황은 회계감사 가 2022. 7.말 종료될 예정이라고 기재되어 있는바, 2022. 11. 23. 이사회 결의 당시 에는 위 회계감사가 종료되고 나서도 수개월이 지난 상태이므로 Igneo의 정확한 2021. 12.말 기준 재무상황을 알 수 있어 Igneo가 완전자본잠식 상태에 있음을 확 인할 수 있었을 것임에도 불구하고 오히려 2022. 7. 11. 주식취득당시의 취득가액 (주당 약 USD 2,645.6)보다 더 비싼 가격(주당 약 USD 2,708.7)으로 Igneo의 주식을 취득하였습니다. Igneo가 완전자본잠식 상태에 있음을 확인하였음에도 불구하고, 이미 73.21%의 지분을 확보하여 경영권 프리미엄이 포함되지도 않는 잔존하는 26.79%의 주식을 더 비싼 가격에 매입할 것을 결정하는 행위는 도저히 선관주의 의무를 다한 행위라고 보기 어렵습니다.

법무법인 케이엘파트너스    서울 중구 청계천로 100 (수표동 99) 시그니처타워 동관 17층 04542
전화 02-6226-7700   팩스 02-6226-7800

또한, 주식 인수 이후 Igneo의 모회사인 Pedalpoint의 경영 현황은 2023. 12.말 기준으로 자산이 약 300억원 감소하였고, 부채는 약 80억원 증가하였으며, 당기순 손실 약 530억원, 포괄손익 약 -415억원으로 악화되었습니다. 나아가, Igneo 인수 이후의 경영 행보는 더욱 수상합니다. Igneo는 고려아연에 인수되기 한 해 전인 2021. 10.경 미국 조지아주 사바나에 전자 폐기물 재활용 시설을 설치하기 위하여 8,500만 달러를 투자하겠다고 약속하였으나, 고려아연이 Igneo를 인수한 후 2023. 6.경 조지아주에 대한 투자를 철회하였습니다(참고자료 7의 4 한국일보 2024. 8. 28. 자 기사). 이에 더하여, 고려아연은 Igneo 인수과정에서 Igneo의 신주를 약 2,000 억원에 인수하면서 이 금액을 Igneo의 제련소 건설 및 자회사인 EvTerra를 통해 미국 전역 및 멕시코의 폐기물 수집 및 처리시설 건설에 활용하며, 2023. 미국 내 제련소를 3개로 증설하겠다는 내용의 투자계획을 발표한 바 있으나, 현 재 Igneo가 추가로 집행한 투자는 EvTerra의 폐기물 수집 및 처리시설 4곳 뿐이며, 이마저도 기존 창고건물을 임대해 폐기물 처리장비만 설치하는 수준이어서 대규 모 자금이 소요되지는 않은 것으로 보입니다(참고자료 7의 5 아틀란타뉴스 2024. 8. 29.자 기사). 신규 투자자금 2,000억원을 확보하였음에도 불구하고 예정된 투자 를 철회하고, 발표한 투자계획마저도 제대로 이행하지 않고 있는 Igneo의 경영 행 태를 보면, 피고소인들의 Igneo 투자 결정은 모종의 음모가 개입되어 있지 않고서 는 전혀 설명이 되지 않습니다.

이와 같은 피고소인들의 투자 결정으로 인하여, 고려아연은 투자금액 약 5,800억원에서 Igneo의 잔존 회사가치를 제외한 금액만큼의 액수불상의 손해를 입 었습니다.

**다. 씨에스디자인그룹과의 인테리어 계약 체결 및 그로 인한 고려아연의 손실**

12 / 21



고려아연은 피고소인 최윤범의 인척(처형)이 운영하는 것으로 의심되는 씨에스디자인그룹과 수차례 인테리어 계약을 체결하였다는 의혹을 받고 있습니다(참고자료 8 여성경제신문 2024. 7. 14.자 기사). 씨에스디자인그룹은 설립된 지 1년도 안되어 고려아연으로부터 인테리어 관련 사업을 거의 독점적으로 수주하고 그에 힘입어 급성장을 하였는데, 구체적으로 고려아연의 논현동 사옥 인테리어를 시작으로, 고려아연의 자회사인 징크옥사이드 코퍼레이션의 사옥 건축, 설계 및 인테리어를 전담하였고, 고려아연의 온산제련소 주차빌딩과 통합경비동, 안전교육장, 보건센터, 안전통합센터, 통근버스 정류장의 건축 및 인테리어 설계를 전부 수주하였으며, 고려아연의 자회사인 스틸싸이클의 사옥 설계도 맡은 것으로 확인됩니다. 또한 씨에스디자인그룹의 홈페이지[7]에는 고려아연의 계열사인 케이잼, 케리스사, 징크옥사이드 코퍼레이션, 한국전구체, 코리아니켈, 켐코, 스틸싸이클 등이 고객사로 명시되어 있습니다.  나아가, 위 기사의 내용에 따르면 씨에스디자인그룹은 이와 같은 인테리어 계약 체결로 인하여 매출액은 2022년 10억 4000만원에서 불과 1년 만인 2023년 31억 6000만원으로 3배 가량, 같은 기간 자산도 7억 8천만원에서 14억 4000만원으로, 영업이익 역시 7억원에서 8억 2000만원으로 증가하였습니다.

공정거래법 제45조 제1항 제9호에 따르면, 사업자는 부당하게 특수관계인 또는 다른 회사에 용역 등을 제공하거나 상당히 유리한 조건으로 거래하는 행위 등을 통하여 특수관계인 또는 다른 회사를 지원하는 행위를 하여서는 아니되는바, 고려아연의 위와 같은 행위는 공정거래법이 금지하는 불공정거래행위에 해당할

---

[7] 언론의 일감몰아주기 의혹 제기 및 취재가 진행되자 씨에스디자인그룹의 홈페이지는 현재 폐쇄된 상태입니다.

법무법인 케이엘파트너스    서울 중구 청계천로 100 (수표동 99) 시그니처타워 동관 17층 04542
전화 02-6226-7700    팩스 02-6226-7800

가능성이 높습니다.  또한, 고려아연은 최윤범의 인척이 운영하는 회사와 부당한 조건으로 거래하는 경우 세법상으로도 손실을 입을 가능성이 높습니다.

결국, 피고소인들은 씨에스디자인그룹과의 인테리어 계약 체결로 인하여 고려 아연은 (1) 공정한 내용으로 계약이 체결되었다면 지불하지 않았어도 될 금액, (2) 공정거래법상 금지되는 불공정거래행위가 인정되는 경우 고려아연이 부담하게 될 과징금 및 (3) 고려아연과 씨에스디자인그룹이 부당한 조건으로 거래하는 경우로 인정되는 경우 발생할 수 있는 세법상 손실액에 해당하는 액수만큼의 손해를 입 었습니다.

## 3. 피고소인들에 대한 업무상 배임 행위의 성립

### 가. 관련법리

업무상 배임죄는 타인의 사무를 처리하는 자가 그 업무상의 임무에 위배한 행위로써 재산상의 이득을 취하거나 제3자로 하여금 이득을 취하게 하여 본인에 게 재산상의 손해를 가한 때에 성립하는 범죄입니다(형법 제355조 제2항, 제356 조).[8]

### 나. 타인의 사무를 처리하는 자의 지위

배임죄에 있어서 '타인의 사무를 처리하는 자'라 함은 타인과의 대내관계에

---

[8] 특정경제범죄 가중처벌 등에 관한 법률 제3조 제1항 제2호에 의하면, 업무상 배임죄 를 범한 자가 그 범죄행위로 인하여 취득하거나 제3자로 하여금 취득하게 한 재물 또는 재산상 이익의 가액이 5억원 이상 50억원 미만일 때 3년 이상의 유기징역에 처하도록 규정하고 있습니다.

**법무법인 케이엘파트너스**    서울 중구 청계천로 100 (수표동 99) 시그니처타워 동관 17층 04542
전화 02-6226-7700    팩스 02-6226-7800

있어서 신의성실의 원칙에 비추어 그 사무를 처리할 신임관계가 존재한다고 인정되는 자를 의미하고, 반드시 제3자에 대한 대외관계에서 그 사무에 관한 권한이 존재할 것을 요하지 않으며, 또 그 사무가 포괄적 위탁사무일 것을 요하는 것도 아니고, 사무처리의 근거, 즉 신임관계의 발생근거는 법령의 규정, 법률행위, 관습 또는 사무관리에 의하여도 발생할 수 있습니다(대법원 2003. 2. 26. 선고 2002도6834 판결 등).

특히 대법원은 "주식회사의 이사는 주주총회에서 선임되며, 회사와 이사의 관계는 위임에 관한 규정을 준용하고, 이사는 법령과 정관의 규정에 따라 회사를 위하여 그 직무를 충실하게 수행하여야 할 의무가 있으므로, 주식회사의 이사는 법률의 규정에 의하여 '타인의 사무를 처리하는 자'로서 배임수재죄의 주체가 될 수 있다."라고 판시하고 있습니다(대법원 2002. 4. 9. 선고 99도2165 판결).

피고소인들은 당시 고려아연의 대표이사의 지위에 있었는바, 위 판례 취지에 의하면 피고소인들은 법률의 규정에 의하여 '타인의 사무를 처리하는 자'로서 업무상 배임죄의 주체가 될 수 있다고 할 것입니다.

**다. 업무상의 임무에 위배한 행위**

배임죄에 있어서 '임무에 위배하는 행위'라 함은 처리하는 사무의 내용, 성질 등 구체적인 상황에 비추어 법률의 규정, 계약의 내용 혹은 신의칙상 당연히 할 것으로 기대되는 행위를 하지 않거나 당연히 하지 않아야 할 것으로 기대되는 행위를 함으로써 본인과 사이의 신임관계를 저버리는 일체의 행위를 의미합니다(대법원 2004. 3. 12. 선고 2004도520 판결 등).



**법무법인 케이엘파트너스**    서울 중구 청계천로 100 (수표동 99) 시그니처타워 동관 17층 04542
전화 02-6226-7700    팩스 02-6226-7800

상법상 이사와 감사는 업무집행에 관하여 선량한 관리자의 주의를 다하여야 하는바(상법 제382조 제2항, 제415조), 객관적으로 통상의 현명한 자가 행하였을 주의를 다하여 회사에 최선의 이익이 되는 것으로 합리적으로 판단되는 방식으로 업무를 수행하여야 합니다. 이와 관련하여 대법원은 "이사는 회사에 대하여 법령과 정관의 규정에 따라 회사의 재산상 손해를 방지하고 성실하게 주식회사를 위하여 최선의 이익이 되도록 직무를 수행하여야 할 선관주의의무 내지 충실의무를 부담하므로, 이사가 그 의무를 위반하여 자신이나 타인의 이익을 위해 업무를 처리함에 따라 회사에 손해가 발생한 경우에는 이사로서 당연히 할 것으로 기대되는 행위를 하지 아니하고 회사와의 신임관계를 저버리는 행위를 한 것으로서 배임죄에서의 임무위배에 해당한다."라고 판시하고 있습니다(대법원 2013. 7. 11. 선고 2011도5337 판결, 대법원 2009. 10. 15. 선고 2009도5655 판결 등 참조).

1) 피고소인들은 고려아연의 대표이사로서 법령과 정관의 규정에 따라, 고려아연의 경제적인 상황이나 그 행위로 인한 손실발생 등을 신중하게 검토하여 고려아연의 투자 결정을 검토하야 할 업무상 임무가 있고, 개인적인 이익 및 제3자의 이익을 추구하기 위하여 회사에 손해를 초래할 수 있는 이유 없는 투자 결정을 하여서는 아니 됩니다.

그런데 앞서 설명드린 바와 같이, 이 사건 펀드들에 대한 투자는 이사회 및 감사위원회의 감시가 무력화된 상태에서 고려아연의 이익이 아닌 지창배, 원아시아파트너스, 카카오 등의 이익을 위하여 이루어졌고, 또한, 이 사건 해외투자는 투자대상회사의 재무상황을 면밀히 검토하여 투자를 해야 함에도 불구하고 완전자본잠식 상태의 회사에 약 5,800억원을 투자하기에 이르게 되었으며, 이 사건 펀드들에 대한 투자 및 이 사건 해외투자로 인해 고려아연에 막대한 손해가 발생하

법무법인 케이엘파트너스    서울 중구 청계천로 100 (수표동 99) 시그니처타워 동관 17층 04542
전화 02-6226-7700    팩스 02-6226-7800

였습니다.  그렇다면, 피고소인들의 행위는 고려아연의 대표이사로서 선관주의의
무를 위반한 업무상 배임죄의 임무위배 행위에 해당합니다.

2) 피고소인 최윤범, 노진수는 고려아연의 대표이사로서 법령과 정관의 규정
에 따라, 계약체결의 상대방 및 거래조건이 적정한지 여부를 신중하게 검토하여
고려아연의 계약 체결을 검토하야 할 업무상 임무가 있고, 개인적인 이익 및 제3
자의 이익을 추구하기 위하여 회사에 손해를 초래할 수 있는 이유 없는 계약을
체결하여서는 아니 됩니다.

그런데 앞서 설명드린 바와 같이, 씨에스디자인그룹은 피고소인 최윤범의 인
척이 운영하는 회사로 그 투자에 있어서 공정성을 보다 면밀히 살필 필요가 있습
니다.  그럼에도 불구하고 피고소인들은 만연히 씨에스디자인그룹과의 인테리어
계약을 체결하여 고려아연으로 하여금 공정거래법 및 세법에 위배되는 행위를 하
도록 하였으며, 거래조건이 불공정하거나 씨에스디자인그룹에 유리하여 공정한
조건의 거래를 하였을 경우에 비하여 고려아연에 손해를 입혔습니다.  그렇다면,
피고소인들의 행위는 고려아연의 대표이사로서 선관주의의무를 위반한 업무상 배
임죄의 임무위배 행위에 해당합니다.

**라. 고려아연의 재산상 손해 발생**

배임죄에서의 재산상 손해를 가한 때라 함은 현실적인 손해를 가한 경우뿐만
아니라 재산상 실해 발생의 위험을 초래한 경우도 포함되고, 일단 재산상 실해
발생의 위험을 초래하였다면 사후에 피해가 회복되었다 하더라도 배임죄의 성립
에는 영향을 주지 않는 것이 원칙입니다(대법원 2000. 12. 8. 선고 99도3338 판결
등).



**법무법인 케이엘파트너스**    서울 중구 청계천로 100 (수표동 99) 시그니처타워 동관 17층 04542
전화 02-6226-7700    팩스 02-6226-7800

앞서 설명드린 바와 같이, 고려아연은 이 사건 펀드들에 투자로 인하여 총 512억원(= 저스티스1호 관련 투자손실 15억원 + 하나바1호 관련 투자손실 95억원 + 그레이제1호사모투자합자회사 관련 투자손실 136억원 + 바이올렛제1호사모투자합자회사 관련 투자손실 120억원 및 SM 주식 현물배당 평가손실 145억원)의 손실을 입었고, 이 사건 해외투자로 인하여 투자금액 약 5,800억원에서 Igneo의 잔존 회사가치를 제외한 금액만큼의 액수불상의 손해를 입었습니다.

또한, 고려아연은 씨에스디자인그룹과의 인테리어 계약 체결로 인하여 (1) 실제 씨에스디자인그룹에 지급한 금액과 공정한 내용의 계약을 체결하였다면 지불하였을 금액의 차액 상당의 금액, (2) 공정거래법상 금지되는 불공정거래행위가 인정되는 경우 고려아연이 부담하게 될 과징금 및 (3) 고려아연과 씨에스디자인그룹이 부당한 조건으로 거래하는 것으로 인정되는 경우 발생하는 세법상 손실액에 해당하는 액수만큼의 손해를 입었습니다.

## 4. 관할

**검찰청법 제3조 제4항**은 "각급 검찰청과 지청의 관할구역은 각급 법원과 지방법원 지원의 관할구역에 따른다."라고 규정하고 있고, **형사소송법 제4조 제1항**은 "토지관할은 **범죄지**, 피고인의 주소, 거소 또는 현재지로 한다."라고 규정하고 있습니다.

이 사건 고소사실 기재 피고소인들의 행위는 모두 고려아연의 본점 소재지에서 이루어졌고, 당시 고려아연의 본점 주소지는 서울 강남구 논현동 142번지 이므로(참고자료 1의 1 고려아연 등기사항전부증명서), 이 사건은 범죄지(강남구)의

18 / 21

관할검찰인 서울중앙지방검찰청의 관할에 속한다고 할 것입니다.

## 5. 결론

위에서 본 바와 같이 2019년과 2021년에 고려아연의 대표이사로 각 취임한 피고소인들은 고려아연 대표이사로서의 임무를 위반하고 고려아연 및 주주의 이익을 해하는 행위를 하였습니다. 이에 고려아연의 최대주주인 고소인은 피고소인 최윤범의 대표이사 취임 이후 경영상 전횡을 목도하고 위와 같은 피고소인들의 범죄사실을 인지하게 되었는바, 이에 이 사건 고소에 이르게 된 것입니다.

이상과 같이 고소인은 피고소인들을 특정경제범죄가중처벌등에관한법률위반(업무상 배임) 혐의로 고소하오니, 피고소인들을 철저히 수사하시어 죄가 인정된다면 엄중한 법의 심판을 받을 수 있도록 해주시기를 바랍니다.

기타 자세한 사실관계와 이에 관한 증거자료는 고소인 진술시 진술하거나 제출하도록 하겠습니다.

## 참 고 자 료

1. 참고자료 1의 1    고려아연 등기사항전부증명서

1. 참고자료 1의 2    고려아연 2024. 8. 27.자 최대주주소유주식변동신고서

1. 참고자료 2의 1    고려아연 2023. 8. 14.자 반기보고서 발췌

1. 참고자료 2의 2    고려아연 2023. 8. 14.자 반기보고서 발췌

1. 참고자료 3의 1    한국경제 2024. 8. 1.자 기사



1. 참고자료 3의 2      원아시아파트너스 등기사항전부증명서

1. 참고자료 4         청호아이씨티 등기사항일부증명서(폐쇄사항)

1. 참고자료 5의 1      서울경제 2024. 4. 15.자 기사

1. 참고자료 5의 2      고려아연 2024. 3. 28.자 사업보고서 발췌

1. 참고자료 5의 3      주식회사 하이브 2023. 2. 10.자 공개매수신고서

1. 참고자료 5의 4      뉴스1 2024. 7. 5.자 기사

1. 참고자료 5의 5      서울경제 2023. 10. 20.자 기사

1. 참고자료 5의 6      뉴스토마토 2024. 7. 9.자 기사

1. 참고자료 6의 1      고려아연 2024. 3. 28.자 사업보고서 발췌

1. 참고자료 6의 2      리버티코리아포스트 2024. 3. 25.자 기사

1. 참고자료 7의 1      고려아연 2022. 7. 11.자 타법인주식및출자증권취득결정(종속
                     회사의주요경영사항)

1. 참고자료 7의 2      고려아연 2022. 11. 23.자 타법인주식및출자증권취득결정(종속
                     회사의주요경영사항)

1. 참고자료 7의 3      고려아연 2022. 7. 11.자 타법인주식및출자증권취득결정

1. 참고자료 7의 4      한국일보 2024. 8. 28.자 기사

1. 참고자료 7의 5      아틀란타뉴스 2024. 8. 29.자 기사

1. 참고자료 8         여성경제신문 2024. 7. 14.자 기사

#### 첨 부 서 류

1. 위 각 참고자료                    각  1부

1. 대리인 선임신고서                   1부

1. 담당변호사 지정서                   1부



법무법인 케이엘파트너스        서울 중구 청계천로 100 (수표동 99) 시그니처타워 동관 17층 04542
전화 02-6226-7700    팩스 02-6226-7800

2024.  9.   25.

고소인의  대리인

법무법인  케이엘파트너스

담당변호사    김    범    수 

담당변호사    이    능    규

담당변호사    이    성    훈

담당변호사    박    기    성

**서울중앙지방검찰청    귀중**

**법무법인 케이엘파트너스**    서울 중구 청계천로 100 (수표동 99) 시그니쳐타워 동관 17층 04542
전화 02-6226-7700    팩스 02-6226-7800