**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In Re *Ex Parte* Application of YOUNGPOONG CORPORATION,**<br><br>**Applicant,**<br><br>**for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery for Use in Foreign Proceedings** | Case No.:_25-MC-194________ |

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 4

A. Until Choi's Destructive Leadership, the Families Behind Youngpoong and Korea Zinc Jointly Owned Korea Zinc Without Conflict for Over Fifty Years .......... 4

B. Korea Zinc's U.S. Subsidiary PedalPoint Pays Approximately $450 Million for Igneo, Despite Knowing Igneo was Worthless .......... 5

C. Youngpoong Files a Books and Records Demand in Korea that Reveals Worse Financial Gaps and Possible Fraud in the Acquisition .......... 7

D. To Stem the Flood of Financial Losses, Youngpoong Files Complaints in Korea, Which Require Further Information Regarding the U.S. Transaction .......... 10

ARGUMENT .......... 13

I. This Application Satisfies the Statutory Requirements of 28 U.S.C. § 1782 .......... 13

A. The Discovery Subject is Found in This District .......... 13

B. Discovery Sought is For Use in a Foreign Proceeding .......... 14

C. Applicant Is an Interested Person .......... 16

II. This Court Should Exercise its Discretion in Favor of Granting the Application .......... 16

A. PedalPoint is Not a Participant in the Foreign Proceeding .......... 17

B. Korean Courts and Prosecutors Would be Receptive to this Court's Assistance .......... 17

C. The Application Does Not Implicate any Foreign Proof Gathering Restrictions .......... 19

D. The Discovery Sought is Not Unduly Burdensome .......... 20

CONCLUSION .......... 21

# TABLE OF AUTHORITIES

## CASES

*Amgen, Inc. v. Celltrion USA, Inc.*, 2024 WL 5182022 (D.N.J. Dec. 20, 2024) .................... 17, 18

*In re Application of Furstenberg Finance SAS*, 334 F. Supp. 3d 616 (S.D.N.Y. 2018), *aff'd sub nom. Paul v. Furstenberg Finance SAS (In re Furstenberg Finance SAS)*, 785 F. App'x 882 (2d Cir. 2019)........................................................ 14

*In re Application of Gorsoan Ltd. & Gazprombank OJSC*, 2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014), *aff'd sub nom. Gorsoan Limited v. Bullock*, 652 F. App'x 7 (2d Cir. 2016)........................................................................ 18

*B&C KB Holding GmbH v. Goldberg Lindsay & Co. LLC (In re B&C Kb Holding GmbH)*, 2024 WL 3170983 (2d Cir. June 26, 2024)............................................. 16

*Bouvier v. Adelson (In re Accent Delight Int'l Ltd.)*, 869 F.3d 121 (2d Cir. 2017) ...................... 15

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) .......................... 19

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ....................................................................... 13

*In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019)................................................................. 13

*Edelman v. Taittinger (In re Edelman)*, 295 F.3d 171 (2d Cir. 2002) .......................................... 13

*Gorsoan Limited v. Bullock (In re Gorsoan Ltd.)*, 652 F. App'x 7 (2d Cir. 2016)....................... 19

*Gushlak v. Gushlak*, 486 F. App'x 215 (2d Cir. 2012) .................................................................. 1

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)........................ 3, 16, 17, 19, 20

*In re Iraq Telecom Ltd.*, 2019 WL 3798059 (S.D.N.Y. Aug. 13, 2019), *reconsideration denied*, 2019 WL 508007 (S.D.N.Y. Oct. 10, 2019) .................................... 17

*Joseph v. Gnutti Carlo S.p.A.*, 2016 WL 4083433 (S.D.N.Y. July 25, 2016).............................. 20

*Lancaster Factoring Co. v. Mangone*, 90 F.3d 38 (2d Cir. 1996) ............................................... 16

*LEG Q LLC v. RSR Corp.*, 2017 WL 3780213 (N.D. Tex. Aug. 31, 2017)................................. 15

*Malsaeng Co., Ltd. v. Kim (In re Request for International Judicial Assistance From the National Court Administration of the Republic of Korea)*, 2015 WL 1064790 (N.D. Cal. Mar. 11, 2015) ........................................................................... 19

*In re Man Group Ltd.*, 2025 WL 294277 (S.D.N.Y. Jan. 24, 2025)............................................ 17

*In re Medytox, Inc.*, 2019 WL 3162174 (S.D. Ind. July 16, 2019), *report and recommendation adopted*, 2019 WL 3556930 (S.D. Ind. Aug. 5, 2019) .................................18

*Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015) ......................................................................... 14, 20

*Metallgesellschaft AG v. Hodapp (In re Application for an Order Permitting Metallgesellschaft AG to take Discovery)*, 121 F.3d 77 (2d Cir. 1997) ................................. 19

*O'Keeffe v. Adelson (In re O'Keeffe)*, 650 F. App'x 83 (2d Cir. 2016) ................................ 17, 18

*Pfaff v. Deutsche Bank AG*, 2020 WL 3994824 (S.D.N.Y. July 15, 2020) .................................. 14

*In re Polygon Global Partners LLP*, 2021 WL 2117397 (S.D.N.Y. May 25, 2021) .................... 18

*In re Regeneron Pharmaceuticals, Inc.*, 2024 WL 4112310 (E.D. Pa. Sept. 6, 2024) ............................................................................................................................. 18

*In re Regeneron*, No. 23-mc-248, Order (D. Del. July 12, 2023), ECF No. 23 ............................ 19

*In re Request for Judicial Assistance from Seoul Central District Court*, 2023 WL 2394545 (N.D. Cal. Mar. 7, 2023) ........................................................................................ 19

*Symeou v. Hornbeam Corp. (In re Hornbeam Corp.)*, 722 F. App'x 7 (2d Cir. 2018) ............................................................................................................................... 1

*In re Tethyan Copper Co. Pty. Ltd.*, 2022 WL 1266314 (S.D.N.Y. Apr. 28, 2022) ..................... 14

*In re Vinmar Overseas, Ltd.*, 2024 WL 2847974 (S.D.N.Y. May 30, 2024) ............................... 13

*In re Woori Bank*, 2021 WL 2645812 (N.D. Cal. June 28, 2021) ............................................... 18

*In re Zarzur*, 2024 WL 81517 (S.D.N.Y. Jan. 8, 2024) ........................................................ 13-14

## STATUTES

28 U.S.C. § 1782(a) ...................................................................................................................... 14

## OTHER AUTHORITIES

Business Wire, *Korea Zinc's Acquisition of Igneo Holdings Sparks Controversy Over 100x Seller Profits*, Fin. Post (Jan. 7, 2025), https://financialpost.com/pmn/business-wire-news-releases-pmn/korea-zincs-acquisition-of-igneo-holdings-sparks-controversy-over-100x-seller-profits .......................................................................................................6

Fed. R. Civ. P. 26(b)(1) ................................................................................................................. 20

Jung Min-hee, *Korea Zinc Faces FTC Investigation Over Alleged Regulatory Evasion via an Overseas Affiliate*, BusinessKorea (Feb. 17, 2025), https://www.businesskorea.co.kr/news/articleView.html?idxno=235579 ........................................................................ 3

Jung Min-hee, *MBK: 'Korea Zinc's Circumvention of Cross-shareholding Regulations Violates Legislative Intent,'* BusinessKorea (Jan. 31, 2025), https://www.businesskorea.co.kr/news/articleView.html?idxno=234523 .................................. 3

Daisuke Wakabayashi & Jin Yu Young, *2 Families, in Business for 50 Years, Wage War in a South Korean Boardroom*, N.Y. Times (Jan. 21, 2025), https://www.nytimes.com/2025/01/21/business/korea-zinc-young-poong.html...................................... 4

Kwon Yoo-jeong, *Korea Zinc Boosts Non-ferrous Metal Production and Targets Nickel for Battery Supply*, ChoSun Biz (Jan. 6, 2025), https://biz.chosun.com/en/en-industry/2025/01/03/ES27FS3CZNCIPEYIHFFCL2MOYE ................................................................ 4

Youngpoong Corporation ("**Youngpoong**" or "**Applicant**"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its application (the "**Application**") for an order pursuant to 28 U.S.C. § 1782 ("**Section 1782**") authorizing it to seek discovery from PedalPoint Holdings, LLC ("**PedalPoint**"), in the form of the subpoenas for documents and testimony attached to the declaration of Brian J. Fischer, Esq. (collectively, the "**Subpoenas**").[1] The Court should grant the Application for the reasons that follow.

**PRELIMINARY STATEMENT**

Youngpoong brings this Section 1782 Application to obtain evidence for its shareholder derivative action and criminal complaint in Korea against directors who breached their duty of care when authorizing the acquisition of a U.S.-based company through a wholly-owned U.S. subsidiary, including because there was no reasonable or adequate basis for the sizable purchase price.

Youngpoong owns 25.4% of Korea Zinc Company, Limited ("**Korea Zinc**"), a family company that had been collaboratively governed for over 50 years (Declaration of Jeong Kyoo Han ¶¶ 6-8). In recent years, however, Korea Zinc's newest Board Chair and Inside Director, Yun Birm Choi ("**Choi**"), and Directors Jin-soo Noh ("**Noh**") and Ki-Deok Park ("**Park**") (individually "**Director**," and collectively, "**Directors**"), have flagrantly violated their fiduciary duties to Korea

[1] Youngpoong moves to file this application *ex parte,* a common and accepted practice that this Court and many others regularly grant pursuant to 28 U.S.C. § 1782. *See e.g.*, *Symeou v. Hornbeam Corp. (In re Hornbeam Corp.)*, 722 F. App'x 7, 10-11 (2d Cir. 2018) (noting there is no impropriety in bringing Section 1782 applications *ex parte* since respondents may move to quash); *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.") (collecting cases). Respondents will be able to move to quash the Subpoenas after they have been served, if they so wish, and thus suffer no injury from this *ex parte* application.

Zinc and its stockholders and improperly blocked Youngpoong from any meaningful participation in the company, including on the board of directors (Han Decl. ¶ 9). Among other conduct, Choi and Noh authorized (in clear violation of their fiduciary duties) Korea Zinc's acquisition of U.S.-based electronic waste collection and recycling company Igneo Holdings, LLC and its subsidiaries (collectively, "**Igneo**"), via U.S.-based Korea Zinc subsidiary PedalPoint, for approximately $442 million (Han Decl. ¶ 19). According to available financial statements, Igneo was not profitable and had no expectations of profitability, had almost no assets but significant liabilities, did not have any capital to grow its business, and was essentially worthless, and yet Korea Zinc acquired it over two share purchases in July and November 2022 for nearly half a billion dollars (the "**Acquisition**") (Han Decl. ¶ 14).

In Korea, Youngpoong has accused the Directors of breaching their duties of care to Korea Zinc and its stockholders, and of other misconduct, in connection with the Directors' authorization of the Acquisition (Han Decl. ¶ 23). Specifically, Youngpoong has filed a shareholders' derivative action against the Directors, focused on their acts and omissions, in the Seoul Central District Court of Korea, *Youngpoong Corporation v. Yun Birm Choi, Jin-soo Noh, and Ki-Deok Park*, Case No. 2025GaHab4454 ("**Shareholder Suit**"), as well as a criminal complaint against two of the Directors, Choi and Noh, with the Fair Trade Division, Seoul Central District Prosecutor's Office Case No. 2024HyeongJe58990 ("**Criminal Complaint**") (collectively, the "**Korean Proceedings**") (Han Decl. ¶ 3 ). Youngpoong has also filed a report to the Fair Trade Commission about Korea Zinc's use of a subsidiary to purchase shares in Youngpoong, thereby voiding Youngpoong's voting rights on Korea Zinc's board in a move that Youngpoong alleges violates

Korean law (Han Decl. ¶¶ 13). The Fair Trade Commission is investigating Korea Zinc's actions.[2] On April 23, 2025, prosecutors from the Seoul Southern District Prosecutors Office raided Korea Zinc's headquarters and other offices on suspicion of unfair trading practices and legal violations relating to a planned stock sale.[3]

Because the misconduct Youngpoong alleges was formally accomplished by a U.S. entity buying another U.S. entity, discovery evidencing that misconduct should reside here. Section 1782 is a proper vehicle for obtaining that discovery. First, Youngpoong's Application fulfills Section 1782's statutory requirements: PedalPoint is found within this District; the discovery is for use in the Korean Proceedings; and, as the party pursuing the shareholder claim and criminal complaint, Youngpoong is an interested party. Second, this Application fulfills the discretionary factors laid out in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004). PedalPoint, the target of this discovery request, is not a participant in the Korean Proceedings; Korean courts have been receptive to Section 1782 discovery in similar cases and would be here; the application does

[2] Jung Min-hee, *Korea Zinc Faces FTC Investigation Over Alleged Regulatory Evasion via an Overseas Affiliate*, BusinessKorea (Feb. 17, 2025), https://www.businesskorea.co.kr/news/articleView.html?idxno=235579; Jung Min-hee, *MBK: 'Korea Zinc's Circumvention of Cross-shareholding Regulations Violates Legislative Intent*,' BusinessKorea (Jan. 31, 2025), https://www.businesskorea.co.kr/news/articleView.html?idxno=234523. Choi used Korea Zinc's own funds to counter a public tender offer by Korea Corporate Investment Holdings Co., Ltd. (a vehicle established by MBK Partners, a private equity firm with expertise in corporate acquisitions and governance restructuring that has partnered with Youngpoong) with a self-tender offer worth over KRW 1.8 trillion ($1.3 billion), financed through more than KRW 2.6 trillion ($1.87 billion) in high-interest debt raised in anticipation of the self-tender offer. (Han Decl. ¶¶ 13-14). Conversion from KRW to U.S. dollars is based on the Seoul Foreign Exchange Market's base exchange rate as of the settlement date of the tender offer, October 28, 2024 (KRW 1,384.40 to $1).

[3] Yonhap, *Korea Zinc offices raided over probe into plan to sell new shares*, The Korea Times (Apr. 23, 2025), https://www.koreatimes.co.kr/business/companies/20250423/korea-zinc-offices-raided-over-probe-into-plan-to-sell-new-shares.

not contravene any foreign proof-gathering restrictions; and finally, Youngpoong's requests are tailored to the issues relevant to the Korean Proceedings, *i.e.*, why PedalPoint paid so much to acquire Igneo and who benefited from the suspicious and wasteful Acquisition, supporting the factual basis for the Directors' breach of fiduciary duties.

## FACTUAL BACKGROUND

### A. Until Choi's Destructive Leadership, the Families Behind Youngpoong and Korea Zinc Jointly Owned Korea Zinc Without Conflict for Over Fifty Years

Over fifty years ago, Byung-hee Jang and Ki-ho Choi, two entrepreneurs and friends, founded Korea Zinc, which became the world's largest refiner of the mineral zinc (Han Decl. ¶¶ 6-8). Korea Zinc is a multinational smelter whose subsidiaries produce or refine non-ferrous metals, primarily zinc and lead.[4] Korea Zinc was one of a range of companies and start-ups Jang and Choi created under the umbrella of their shared corporation, Youngpoong. As is common in Korea, the Jang and Choi founders passed their companies to their families via a joint management structure, with the Jang family serving as the primary shareholder and the Choi family overseeing executive management.[5] Youngpoong itself is Korea Zinc's largest shareholder, with a 25.4%

[4] Kwon Yoo-jeong, *Korea Zinc Boosts Non-ferrous Metal Production and Targets Nickel for Battery Supply*, ChoSun Biz (Jan. 6, 2025), https://biz.chosun.com/en/en-industry/2025/01/03/ES27FS3CZNCIPEYIHFFCL2MOYE.

[5] This system is not uncommon in Korea, where corporations are often run by families in conglomerate companies called *chaebols.* Directors of chaebols who inherit company leadership have at times prioritized personal interests over their company's welfare, leading Korean prosecutors and courts to use criminal breach of trust laws to hold them accountable, in addition to civil liability (Han Decl. ¶ 30).

stake (Han Decl. ¶ 6). The families had an agreement that major decisions would require mutual consent from both parties.[6]

But three generations into the agreement, Choi began destroying Korea Zinc's value with a series of self-serving investments and deals intended to wrest control from Youngpoong and the Jang family (Civil Complaint ("**Civ. Comp.**"), Ex. 13-1, at 6). Shortly after Choi became board chair, Korea Zinc began directing its capital into ultimately unprofitable investments in funds run by one of Choi's childhood friends, paying them excessive management fees (Civ. Comp, Ex. 13-1, at 7).[7] Choi also directed Korea Zinc to procure interior design services from his sister-in-law's company at wildly inflated expense (Civ. Comp. at 24).[8] He also used Korea Zinc's own capital to counter Youngpoong's tender offer, financed through trillions of Korean won ("**KRW**") in debt (Han Decl. ¶ 27). Two other Directors, Noh and Park, failed to check or question Choi, despite the conflicts of interest, the gross negligence of his decisions, and the significant losses that Korea Zinc suffered (Civ. Comp. at 3-4; Han Decl. ¶ 14).

### B. Korea Zinc's U.S. Subsidiary PedalPoint Pays Approximately $450 Million for Igneo, Despite Knowing Igneo was Worthless

Perhaps the most egregious and wasteful transaction Choi authorized was in the United States, where he (and the other Directors) directed Korea Zinc to purchase a newly formed electronics waste processing company with no significant assets, negative capital, and ongoing

[6] Daisuke Wakabayashi & Jin Yu Young, *2 Families, in Business for 50 Years, Wage War in a South Korean Boardroom*, N.Y. Times (Jan. 21, 2025), https://www.nytimes.com/2025/01/21/business/korea-zinc-young-poong.html.

[7] These investments are subject to claims in the Korean Proceedings, but do not relate to the discovery that Youngpoong seeks from PedalPoint.

[8] Youngpoong's derivative suit also includes a claim against this violation of the duty of loyalty, but no U.S.-based discovery is required for the claim.

and expected losses (Han Decl. ¶ 33). Through its U.S. subsidiary PedalPoint, Korea Zinc paid hundreds of millions of dollars to acquire Igneo in 2022 (Han Decl. ¶ 35). Igneo was established only about a year prior, in February 2021, with approximately $2.75 million in capital from a number of investment funds and MCC Non-Ferrous Trading LLC ("**MCC**"), a scrap recycler based in New York (Civ. Comp. at 19). At the time of the Acquisition, Igneo was a very small company: it ran a single recycling center in rural France, and though it had vague plans to construct additional facilities in the United States, it lacked assets or capital to accomplish such plans (Civ. Comp. at 19; Han Decl. ¶¶ 16-17).

Korea Zinc released a corporate disclosure statement on July 11, 2022, the same day it acquired its initial 73.21% of Igneo's shares, which stated that the total equity of Igneo as of December 2021 was only approximately $9.3 million, with net income of approximately $2.8 million (Han Decl. ¶ 16). Nonetheless, Korea Zinc (through PedalPoint) ultimately purchased this eighteen-month-old, capital impaired, unprofitable company for approximately $442 million—that is, nearly *209 times* Igneo's reported annual revenue (Civ. Comp. at 16).[9] Public reporting in Korea described this skewed ratio (understatedly) as "highly unusual."[10] Even more unusual or suspicious, and evidencing another breach of fiduciary duties, was that Korea Zinc completed its total acquisition of Igneo in December 2022 even after dire financial statements for Igneo were released (Han Decl. ¶ 16).

---

[9] Capital impairment occurs when a company's total capital, or funds available, is less than the par value of its stock, or the original value assigned to its stock upon issuance.

[10] Business Wire, *Korea Zinc's Acquisition of Igneo Holdings Sparks Controversy Over 100x Seller Profits*, Fin. Post. (Jan. 7, 2025), https://financialpost.com/pmn/business-wire-news-releases-pmn/korea-zincs-acquisition-of-igneo-holdings-sparks-controversy-over-100x-seller-profits.

Youngpoong subsequently discovered that the actual situation at Igneo was much worse than Korea Zinc reported at the time. The Igneo audited financial statements for the year ending December 31, 2021, released after the July 2022 Transaction (and which should have been obtained before making an investment decision), showed net assets (capital) of approximately *negative* $1.4 million, and thus capital impairment, and a comprehensive net loss (*negative* income) of approximately $3.5 million (Han Decl. ¶ 19). The audited financial statements revealed that Igneo was unprofitable, its liabilities were greater than its assets, and it did not have capital to execute any development plans—and thus was essentially worthless (Han Decl. ¶ 19). These financial statements also revealed that Igneo did not expect to earn a profit in the future, as it valued therein its prior net operating losses at zero (Han Decl. ¶ 19).[11] Yet this in no way deterred Korea Zinc from completing its purchase: in November 2022, it had PedalPoint buy the remaining shares of Igneo—this time, for $63 *more* per share than it had paid in July (Civ. Comp. at 16-17). After the Acquisition, PedalPoint did not turn things around. Igneo's financial results worsened. For example, Igneo had $13 million in operating losses in 2022, growing to $16 million in 2023 (Civ. Comp. at 19).

### C. Youngpoong Files a Books and Records Demand in Korea that Reveals Worse Financial Gaps and Possible Fraud in the Acquisition

Deeply concerned about the circumstances and ensuing results of PedalPoint's purchase of Igneo, in November 2024, Youngpoong filed the Korean procedural equivalent of a shareholder's demand to review books and records (Han Decl. ¶ 22). It requested an injunction to copy and

[11] Normally, when a company suffers a taxable loss, there is value to such loss (Net Operating Loss, "NOL") that may be used to offset taxable income from subsequent years, and thus the value of the NOL is recognized on the financial statements of the company.

inspect Korea Zinc's accounting books in the Seoul Central District Court, Case No. 2024KaHap21390 ("**Accounting Action**") (Han Decl. ¶ 22). Youngpoong's ability to obtain documents was extremely limited: Under the Korean Commercial Code, shareholders may only demand disclosure of "financial records," and only if they can prove their existence and even their location (Han Decl. ¶ 22). Korea Zinc refused to produce most of the documents Youngpoong sought (Han Decl. ¶ 22). It also claimed that certain documents were either overly vague in their request or irrelevant to the matters at issue (Han Decl. ¶ 22). In the Accounting Action, Youngpoong was able to obtain some of the relevant contracts and documents, but Korea Zinc refused to produce any documents related to the valuation methodologies, due diligence, negotiations, and other material related to the transaction review and approval process (Han Decl. ¶ 22). Nevertheless, what Youngpoong has been able to learn about the transaction reveals an array of issues. For example:

- As described above, the financial information about Igneo that Korea Zinc disclosed during the July 2022 Transaction painted a very different picture of Igneo than the reality shown by the audited financial statements of Igneo for 2021 (Han Decl. at ¶¶ 19-20). Korea Zinc claimed that the difference could be explained because its financial reporting at the time of the July 2022 Transaction included approximately 70 contracts to be transferred from MCC to Igneo. However, there was no evidence of any consideration being paid to MCC by Igneo in exchange for the contracts, which should have occurred if such agreements had value (Civ. Comp. at 20). Igneo continued to lose money in spite of apparently receiving such contracts from MCC and there is a

serious question about whether such contracts had any value, especially if they would not be profitable (Civ. Comp. at 20).[12]

- A Unit Purchase Agreement from the July 2022 Transaction included a subscription agreement between PedalPoint and Igneo stating that PedalPoint would purchase $150 million (less certain specified deductions) of new units (equity) in Igneo, with those funds to be used by Igneo to build a processing plant in Savannah, Georgia, create a certain "hub and spoke" system in the United States, repay a certain debt to MCC, and acquire certain minority interest shares of Igneo France (Han Decl. ¶ 17). But construction of the Georgia plant was abandoned, and the outcome of the remainder of the commitments is unclear, as is the use and transfer of the large amount of funds paid to Igneo (Han Decl. ¶ 17).
- The Unit Purchase Agreements with controlling or large former owners of Igneo did not include customary representation and warranty clauses regarding Igneo's financial status. (Civ. Comp. at 22). Thus, buyer PedalPoint had no guarantee that Igneo was in fact as (relatively) financially healthy as its unaudited reports claimed.
- Igneo had issued a convertible bond for $2.5 million in 2021 to one of the former owners of Igneo, TC GD Investor LLC, which was converted into shares of Igneo that PedalPoint then purchased for 10 times that amount only a short time later - *$25 million* (Civ. Comp. at 22).

[12] Youngpoong seeks U.S. discovery on the value of these contracts.

- Igneo France, the only operating subsidiary of Igneo, suffered substantial losses and had negligible intangible assets (Civ. Comp. at 22).

In addition to information learned from the Accounting Action, recent public reporting reveals that Igneo's only operations, the French facility, had far less revenue and value at the time of the Acquisition than what was reported by Korea Zinc (Civ. Comp at 22).[13] Thus, while the Accounting Action helped shine light on inconsistencies in the Acquisition and related public reporting by Korea Zinc, it raised even more questions. U.S.-based discovery is needed to further illuminate the transaction and show how the Directors breached their duties.

**D. To Stem the Flood of Financial Losses, Youngpoong Files Complaints in Korea, Which Require Further Information Regarding the U.S. Transaction**

Upon confirming its suspicions that the Acquisition was, at best, a waste of assets and major financial loss for shareholders, and in any event a clear breach of fiduciary duty of the Directors, Youngpoong filed two legal actions in Korea. Youngpoong filed the Shareholder Suit under Republic of Korea Article 399 of the Commercial Act for breach of the duty of care on Korea Zinc's behalf against Choi, Noh, and Park, on January 9, 2025 (Han Decl. ¶ 23). Article 399 makes directors who intentionally or negligently damaged a company liable for the harm that they caused (Han Decl. ¶¶ 24-26). Directors also have a duty of oversight over other directors and company employees if they had reason to suspect unlawful conduct and failed to take corrective

[13] To compare, in November 2021, SA Recycling, the third-largest copper recycling exporter in the United States, acquired PSC Metals, the largest non-ferrous metal recycling company in the eastern United States, for $290 million. PSC Metals had been in the industry for 135 years, employed 200 people, and had annual revenue of $200 million. In 2022, PedalPoint acquired Igneo for $442 million despite Igneo being composed primarily of newly formed companies with limited experience and operational history in electronic waste recycling within the United States, and annual revenue of only $2 million. (Han Decl. ¶ 20).

action (Han Decl. ¶ 26). The Shareholder Suit alleges that Directors Choi and Noh had violated their duty of care to Korea Zinc by directing it (via PedalPoint) to acquire Igneo for a wildly inflated and wasteful amount, including for failing to unwind the transaction or pursue other claims after the audited 2021 financial statements revealed significant discrepancies with previously reported information (Civ. Comp. at 19). The claim demands an estimated KRW 300 billion (over $200 million) in damages be returned to the company for its acquisition of Igneo (Civ. Comp. at 26). The exact amount is to be determined based on Igneo's actual market value, if any, as assessed in large part based on the discovery sought via this Application.[14]

Youngpoong also filed the Criminal Complaint against Choi for authorizing the Acquisition, among other financially wasteful acts, and Noh as a Director of Korea Zinc for failing to fully examine Korea Zinc's actions in connection with the Acquisition before approving them (Criminal Complaint, Dkt. 13-2 at 5-6). Korean criminal laws under Article 356 of the Korean Criminal Act and Article 3 of the Act on the Aggravated Punishment for Specific Economic Crimes make it illegal to knowingly breach the duty of trust when (i) a person is entrusted with handling another's affairs; (ii) he violates his duties in that role; (iii) he obtains financial benefits for himself or a third party; and (iv) his actions cause harm to the principal (i.e., the company) (Han Decl. ¶ 31). The Criminal Complaint was filed with the Seoul Central District Prosecutor's Office as required by Korean criminal procedure on September 25, 2024 (Han Decl. ¶¶ 3, 29).

[14] The shareholder complaint also alleges that Choi, Noh and Park violated their duty of care by investing millions of dollars in a now-indicted friend's investment funds, leading to billions' worth of KRW in losses for the company, and spending KRW 3.3 billion (over $2 million) on interior decoration services from his sister-in-law for various offices and subsidiaries, giving her preferential treatment in contract selection in violation of the Korean Monopoly Regulation and Fair Trade Act (Civ. Comp. at 5).

Additionally, following a report from Youngpoong, the Fair Trade Commission of the Republic of Korea announced an investigation into Korea Zinc on February 17, 2025. The Fair Trade Commission is examining whether Korea Zinc violated the Fair Trade Act by using another small second-tier subsidiary, Sun Metals Corporation Pty., Ltd., to purchase shares of Youngpoong and thereby block its votes on the Korea Zinc board, disrupting the company's investigation into the Korean Proceedings (Han Decl. ¶ 11).

Further information about why, and the basis upon which, Korea Zinc, through its U.S. subsidiary PedalPoint, spent nearly $450 million on a small and unprofitable company based in the United States is available in the United States, and specifically in the Southern District of New York where PedalPoint is located (Fischer Decl. ¶ 4). PedalPoint possesses critical information about Igneo's valuation, its former owners, assets, liabilities and other financial information, and the transaction between PedalPoint and Igneo. Youngpoong requires this information for use in the Korean Proceedings, to demonstrate that Choi either disregarded vital financial information about the company he was acquiring or, worse, enriched himself or third parties via the purchase, and that Noh failed to monitor him, in breach of their respective fiduciary duties. This information is also necessary to determine damages, which requires information about the fair market value of Igneo at the time of the Acquisition. Youngpoong needs to be able to present the financial and other due diligence information that PedalPoint and the Directors relied upon in connection with the Acquisition, including the reports and valuation analyses of outside advisors and auditors. Because the Korean civil court lacks jurisdiction over the American entities and individuals that hold this evidence (Han Decl. ¶ 42), and because pretrial discovery is virtually unavailable in Korea (Han Decl. ¶ 37), Youngpoong—like many Korean companies and courts in similar

circumstances—now turns to the Section 1782 process to obtain evidence that exists in the United States for use in the Korean Proceedings.

## ARGUMENT

### I. This Application Satisfies the Statutory Requirements of 28 U.S.C. § 1782

Section 1782 permits a district court to grant an application where three requirements are met:

> (1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or any interested person.

*Edelman v. Taittinger (In re Edelman)*, 295 F.3d 171, 175–76 (2d Cir. 2002). Youngpoong's Application satisfies each.

#### A. The Discovery Subject is Found in This District

The first statutory requirement is that the "person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made." *In re Vinmar Overseas, Ltd.*, 2024 WL 2847974, at *2 (S.D.N.Y. May 30, 2024) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)) (granting application and finding that limited liability company registered in Texas resided in New York). The "resides or is found" language in Section 1782 extends to the limits of personal jurisdiction consistent with due process. *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (affirming grant of Section 1782 discovery application for respondent subject to general personal jurisdiction). A corporation is subject to general personal jurisdiction, consistent with due process, in the states of its incorporation or principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137-39 & n.19 (2014). Courts have used the same standard for

limited liability companies like PedalPoint. *See, e.g.*, *In re Vinmar*, 2024 WL 2847974, at *3; *In re Zarzur*, 2024 WL 81517, at *1 (S.D.N.Y. Jan. 8, 2024) (granting discovery on limited liability company registered in Texas, with a principal place of business in New York). PedalPoint records indicate that it is located in this District (Fischer Decl. ¶ 4). PedalPoint is therefore subject to this Court's jurisdiction.[15]

**B. Discovery Sought is For Use in a Foreign Proceeding**

As numerous courts have stated, "[u]nder the plain text of § 1782, a foreign proceeding includes 'a proceeding in a foreign or international tribunal.'" *In re Tethyan Copper Co. Pty. Ltd.*, 2022 WL 1266314, at *1 (S.D.N.Y. Apr. 28, 2022) (quoting 28 U.S.C. § 1782(a)). Section 1782(a) also states that discovery may be granted for "criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a); *see also In re Application of Furstenberg Fin. SAS*, 334 F. Supp. 3d 616, 619 (S.D.N.Y. 2018), *aff'd sub nom. Paul v. Furstenberg Fin. SAS (In re Furstenberg Fin. SAS)*, 785 F. App'x 882 (2d Cir. 2019) (finding applicants' declared intent to file a criminal complaint on the basis of a specific legal theory constituted a proceeding "within reasonable contemplation" under the Second Circuit's requirements).

Further, to satisfy the requirement, the discovery must be "for use" in an "adjudicative" proceeding. 28 U.S.C. § 1782(a). To qualify as "for use," the discovery sought "will be employed with some advantage or serve some use in the proceeding— not necessarily something without

[15] The Court also may exercise specific jurisdiction over PedalPoint for the Acquisition because it acquired Igneo, a company also located within this District at the time (Fischer Decl. ¶ 5 (Igneo's location in White Plains, NY)). A court has specific personal jurisdiction over a foreign company for the purposes of obtaining discovery if "the respondent's having purposefully availed itself of the forum [is] the primary or proximate reason that the evidence sought is available at all." *Pfaff v. Deutsche Bank AG*, 2020 WL 3994824, at *8 (S.D.N.Y. July 15, 2020) (citation omitted).

which the applicant could not prevail." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). The applicant must have the "practical ability to inject the requested information into [the] foreign proceeding." *Bouvier v. Adelson (In re Accent Delight Int'l Ltd.)*, 869 F.3d 121, 132 (2d Cir. 2017). Youngpoong easily satisfies both of these requirements. The Shareholder Suit is currently pending in the Seoul Central District Court, a foreign tribunal. The Criminal Complaint was filed with and is pending before the Seoul Central District Prosecutor's Office.

The evidence sought here will be used in both. Youngpoong is alleging that Korea Zinc used a U.S. subsidiary to acquire a U.S. business at a wildly inflated and wasteful purchase price, and that the financial information released at the time of the transaction was far different from the bleak financial results of Igneo reflected in its audited (actual) financial statements. If, as Youngpoong expects, information about Igneo's actual value was available to the Directors and they did not review it, or reviewed it and disregarded it, or the information does not support the purchase price paid for Igneo, that evidence would support the claim that the Directors violated their duty of care to perform due diligence on transactions and ensure that they are not wasteful, unreasonable, or self-dealing. Youngpoong now seeks information from PedalPoint to determine Igneo's true value, if any, what was known about its value and status at the time of the transaction, and how Igneo was purchased for such a drastically different price than its worth. This information is relevant to Youngpoong's claims that the Directors breached their duty of care in the Shareholder Suit by failing to perform proper due diligence, or intentionally acquiring an over-valued company, and the related allegations Youngpoong asserted in the Criminal Complaint. *Cf. LEG Q LLC v. RSR Corp.*, 2017 WL 3780213, at *1 (N.D. Tex. Aug. 31, 2017) (granting Section 1782 petition brought by a minority shareholder of a lead recycling company planning to bring a

shareholder derivative suit in the English High Court alleging that directors breached their duty of care by violating English law and siphoning company assets into entities that a director and his family owned).

### C. Applicant Is an Interested Person

Youngpoong is an "interested person" within the meaning of Section 1782. The Supreme Court has explicitly stated that an "interested person" is a "complainant [who] 'possess[es] a reasonable interest in obtaining [judicial] assistance.'" *Intel*, 542 U.S. at 256. A litigant in a foreign proceeding plainly falls within the definition of "interested person." *See Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) ("The legislative history to § 1782 makes plain that 'interested person' includes 'a party to the foreign . . . litigation.'") (citation omitted). Youngpoong is the petitioner in the Korean Proceedings and therefore is an interested person.

## II. This Court Should Exercise its Discretion in Favor of Granting the Application

Where, as here, the statutory elements are satisfied, the Court is to next evaluate the application "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *B&C KB Holding GmbH v. Goldberg Lindsay & Co. LLC (In re B&C Kb Holding GmbH)*, 2024 WL 3170983, at *2 (2d Cir. June 26, 2024) (citation omitted). The Supreme Court in *Intel* outlined four "discretionary" factors comprising this additional evaluation: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency

abroad to U.S. federal- court judicial assistance;" (iii) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (iv) whether the request is otherwise "unduly intrusive or burdensome." 542 U.S. at 264-65. These factors all weigh in favor of granting Youngpoong's Application.

### A. PedalPoint is Not a Participant in the Foreign Proceeding

Consistent with the first *Intel* factor, courts routinely grant discovery when the respondent is not a party to the foreign proceeding. *See O'Keeffe v. Adelson (In re O'Keeffe)*, 650 F. App'x 83, 84 (2d Cir. 2016) (authorizing Section 1782 discovery from non-party) (summary order); *see also In re Iraq Telecom Ltd.*, 2019 WL 3798059, at *4 (S.D.N.Y. Aug. 13, 2019) (granting Section 1782 discovery against non-party banks).[16] PedalPoint is a U.S.-based company not party to the Korean Proceedings. This is true even when the target is a subsidiary of a party in the foreign proceedings. *See, e.g., In re Man Grp. Ltd.*, 2025 WL 294277, at *3 (S.D.N.Y. Jan. 24, 2025) (granting petition against subsidiary of party in foreign proceeding because subsidiaries "are considered separate legal entities from their subsidiaries and affiliates for Section 1782 purposes." (citing *In re del Valle Ruiz*, 939 F.3d at 523)).

---

[16] This is the still case when the respondent is a subsidiary to a defendant in a Korean proceeding, as the U.S.-based subsidiary "is the only target of the present § 1782 application, and only evidence within [the U.S. subsidiary's] possession, custody, and control remains subject to discovery under the subpoena"; thus, because "it is not a party to the South Korean Proceedings . . . such evidence falls outside of the reach of the Korean courts." *Amgen, Inc. v. Celltrion USA, Inc.*, 2024 WL 5182022, at *7 (D.N.J. Dec. 20, 2024) (granting discovery into U.S.-based drug manufacturer for anticipated action in Korea).

**B. Korean Courts and Prosecutors Would be Receptive to this Court's Assistance**

The second *Intel* factor also weighs in favor of Applicant. "In this Circuit, this factor requires consideration of 'only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782.'" *In re Polygon Glob. Partners LLP*, 2021 WL 2117397, at *8 (S.D.N.Y. May 25, 2021) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)). U.S. courts regularly conclude that Korean courts are receptive to Section 1782 evidence. *See, e.g.*, *In re Regeneron Pharms., Inc.*, 2024 WL 4112310, at *4 (E.D. Pa. Sept. 6, 2024) (granting application for documents and testimony from U.S. supplier to Korean company for civil dispute in Korean court, stating "the Court need only consider whether South Korean courts are generally receptive to evidence obtained from foreign courts."). Absent "authoritative proof" that the Korean court would reject evidence obtained with the aid of Section 1782, this factor weighs in favor of granting discovery. *In re O'Keeffe*, 650 F. App'x at 85 (noting the absence of evidence that the foreign court would be unreceptive to U.S. judicial assistance). The "party opposing the Section 1782 application bears the burden of proving the non-receptivity of the foreign tribunal." *In re Application of Gorsoan Ltd. & Gazprombank OJSC*, 2014 WL 7232262, at *7 (S.D.N.Y. Dec. 10, 2014) (rejecting motion to vacate granting of Section 1782 application), *aff'd sub nom. Gorsoan Ltd. v. Bullock*, 652 F. App'x 7 (2d Cir. 2016).

Numerous other courts granting applications for Section 1782 discovery for use in civil and criminal proceedings in Korea, including very recent ones, have found that this factor weighs in favor of granting the application. *See, e.g.*, *Amgen, Inc.*, 2024 WL 5182022, at *2 (finding that "Korean courts are receptive to receiving and considering evidence, including that obtained by an action under 28 U.S.C. § 1782"); *In re Woori Bank*, 2021 WL 2645812, at *3–4 (N.D. Cal. June

28, 2021) (granting Section 1782 application seeking discovery for use in litigation before the Seoul Central District Court); *In re Medytox, Inc.*, 2019 WL 3162174, at *10 (S.D. Ind. July 16, 2019) (same), *report and recommendation adopted*, 2019 WL 3556930 (S.D. Ind. Aug. 5, 2019); *In re Regeneron*, No. 23-mc-248-MN-LDH, Order at 10 (D. Del. July 12, 2023), ECF No. 23 (same).

**C. The Application Does Not Implicate any Foreign Proof Gathering Restrictions**

The third *Intel* factor requires this Court to consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Under *Intel,* there is no requirement that the evidence be discoverable or admissible in the foreign proceeding *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012); *see also Gorsoan Ltd. v. Bullock (In re Gorsoan Ltd.)*, 652 F. App'x 7, 9 (2d Cir. 2016). Moreover, the applicant need not have asked the foreign court for the discovery, because the statute does not contain any "exhaustion requirement" or "'quasi-exhaustion requirement.'" *Metallgesellschaft AG v. Hodapp (In re Application for an Ord. Permitting Metallgesellschaft AG to take Discovery)*, 121 F.3d 77, 79 (2d Cir. 1997).

Youngpoong is not aware of any proof gathering restrictions in Korean courts that would preclude the use of the sought discovery. In fact, South Korean courts have themselves requested evidence from U.S. courts in similar matters. *See In re Request for Jud. Assistance from Seoul Cent. Dist. Court*, 2023 WL 2394545, at *4 (N.D. Cal. Mar. 7, 2023) (granting request from Seoul Central District Court for the disclosure of social media users' identities from Meta for use in a civil defamation claim); *Malsaeng Co., Ltd. v. Kim (In re Request for Int'l Jud. Assistance From*

*the Nat'l Ct. Admin. of the Republic of Korea)*, 2015 WL 1064790, at *1 (N.D. Cal. Mar. 11, 2015) (granting request from Seoul Central District Court for software sales data in pursuit of a damages claim). Therefore, the evidence would not be against the Korean court's proof gathering restrictions.

**D. The Discovery Sought is Not Unduly Burdensome**

The fourth *Intel* factor asks whether Applicant's request for discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 245. In addressing this factor, courts should not limit discovery to the scope of discovery available in the foreign proceeding, as "[f]ew if any foreign jurisdictions permit the scope of discovery available in our courts." *Mees*, 793 F.3d at 302. "Rather, a district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Id.* Rule 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "While not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Joseph v. Gnutti Carlo S.p.A.*, 2016 WL 4083433, at *1 (S.D.N.Y. July 25, 2016) (citation omitted) (granting discovery on a Section 1782 petition in part on the basis of Rule 26).

The discovery sought in the Subpoenas is appropriately tailored: it focuses on two related transactions that accomplished the Acquisition and that are central to the Korean Proceedings. Youngpoong seeks targeted document discovery from PedalPoint focused on that Acquisition, as well as a Rule 30(b)(6) deposition and depositions from four officers who possess unique knowledge about the Acquisition. The requested documents involve a limited number of subjects, narrowed to a reasonable time period (primarily two years, except where a four-year window is

relevant). The requests essentially target how (and on which documents and reports) PedalPoint determined Igneo's value, including its projected financial results at the time of the Acquisition and any other reasons that PedalPoint may have paid so much for Igneo—over one hundred times its sellers' initial investment—including by assessing the identity of the beneficial owners and any conflicts of interest with Korea Zinc or the Directors. These subjects are relevant to demonstrating in the Korean Proceedings that Korea Zinc's purchase of Igneo was either in reckless disregard of its actual value, breaching the duty of care, or intentional and criminal in nature, amounting to a breach of the duty of loyalty.[17]

## CONCLUSION

Because Youngpoong satisfies all of the necessary elements required to obtain discovery pursuant to Section 1782 and all relevant discretionary considerations weigh in favor of granting this Petition, it respectfully requests that the Court grant the Application authorizing issuance of the requested Subpoenas.

Dated: April 28, 2025

Respectfully submitted,

By: /s/ Brian J. Fischer

Brian J. Fischer
Jason P. Hipp
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
bfischer@jenner.com
jhipp@jenner.com
*Attorneys for Youngpoong Corporation*

[17] The subpoenas call for depositions to proceed shortly after documents are produced, and for documents to be produced within 14 days of service. Youngpoong stands ready to meet and confer in good faith to discuss appropriate adjustments to these dates and deadlines. If PedalPoint has concerns about the burden that may arise after it conducts a reasonable search of its records and prepares for depositions, these can be managed through the meet and confer process.

# CERTIFICATE OF COMPLIANCE

I, Brian J. Fischer, counsel for Applicant, do hereby certify that:

This brief complies with the type-volume limitation of Local Rule 7.1(c) because this brief contains 6,528 words

Dated: April 28,2025 /s/ Brian J. Fischer