**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**In Re *Ex Parte* Application of**
**YOUNGPOONG CORPORATION,**

**Applicant,**

**for an Order Pursuant to 28 U.S.C. § 1782**
**to Take Discovery for Use in**
**Foreign Proceedings**

Case No.: 25-MC-194

**ORAL ARGUMENT REQUESTED**

**SUR-REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO RESPONDENTS' MOTION TO VACATE THE COURT'S JULY 2 AND JULY 16 ORDERS AND TO QUASH THE SUBPOENAS ISSUED PURSUANT TO THE SAME ORDERS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ALLEGATIONS AND FACTS .......... 1

ARGUMENT .......... 3

I. THE COURT SHOULD NOT ENTERTAIN THESE NEW ARGUMENTS .......... 3

II. NO CONTACTS WITH MS. HA ARE SANCTIONABLE .......... 3

A. Korean Law and Ethical Rules Have Not Been Violated. .......... 3

B. Dismissal of the Application Would be an Unjust and Unsupported Sanction. .......... 4

CONCLUSION .......... 5

# TABLE OF AUTHORITIES

## CASES

*Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110 (2d Cir. 1999)....................................3

*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995) ................................................5

*Lee v. Sass*, No. 04-70550, 2006 WL 799176 (E.D. Mich. Mar. 29, 2006) ...................................5

*Tolliver v. McCants*, No. 05 CIV. 10840, 2009 WL 1473445 (S.D.N.Y. May 26, 2009), *aff'd*, 486 F. App'x 902 (2d Cir. 2012) ...........................................................................3

*Wolters Kluwer Financial Services, Inc. v. Scivantage*, 564 F.3d 110 (2d Cir. 2009) ......................................................................................................................................4

Youngpoong respectfully submits this Sur-Reply to Respondents' motion to vacate and quash ("Motion"), ECF 30.[1] Respondents' Motion should be denied in full.

## PRELIMINARY STATEMENT

Respondents could have made their argument accusing Youngpoong and its Korean counsel of "sanctionable witness tampering" (ECF 41 at 9) in their August 7 Motion. They did not. Presumably, they recognized the argument's lack of merit and left it on the cutting room floor. Desperate now for something to distract from their inability to rebut the well-founded basis of Youngpoong's Application, Respondents trot it out on reply, evidently hoping their spurious charges will be the first and final word on the matter.

Youngpoong's response—and the reality—is simple: Respondents do not allege facts or cite cases that support sanctions. Two of the people in question are third-parties who acted without Youngpoong's knowledge, authorization, instruction, or direction. Respondents' wishful intimations to the contrary do not change this. The third, a junior associate at a Korean law firm engaged for other purposes, violated no applicable ethical rules in texting a potential witness with no apparent or alleged Korean representation.

## ALLEGATIONS AND FACTS

Respondents push a jumble of charges hoping to create the impression that Youngpoong coordinated a multi-pronged scheme to harass and intimidate Ms. Ha. That is simply untrue.

First, Youngpoong did not know about, authorize, instruct, or direct the communications of Ji-Woong "Fred" Yoon, an ex-PedalPoint analyst with whom Ms. Ha recently worked. Declaration of Janet Ha ("**Ha Decl.**"), ECF 44, ¶6; Declaration of Gie Hyun Youn ("**Youn Decl.**")

---

[1] The terms herein have the same definitions provided in Youngpoong's Memorandum of Law in Support of its Application, ECF 15, and its Memorandum in Opposition, ECF 36.

¶ 5. Mr. Yoon allegedly attempted to reconnect with Ms. Ha in March 2025, and the two met in person in April 2025. Ha Decl. ¶¶ 9, 10;[2] Whatever the interaction's propriety, it was neither known to nor the doing of Youngpoong. Youn Decl. ¶¶ 4, 7. Respondents present no facts to the contrary. Indeed, by Ms. Ha's own retelling, Mr. Yoon told her he was working with an individual named Yoon-bae Park, a Korea Zinc minority shareholder who served as a representative for a different company, "DLLO Inc.," not Youngpoong. Ha Decl. ¶¶ 19, 38.

Second, Youngpoong did not know about, authorize, instruct, or direct the communications of Mr. Park, who contacted Ms. Ha in September 2025. *Id.* ¶ 38. Respondents present no facts to the contrary.[3] Indeed, per Ms. Ha, Mr. Park introduced himself as a Korea Zinc shareholder associated with DLLO Inc. and made no mention of Youngpoong. *Id.*

Third, Young Ji Kim, a junior associate with the Korean law firm YK Law ("**YK**"), contacted Ms. Ha via LinkedIn on June 1 and July 3 and then via text message on August 5, 2025. *Id.* ¶¶ 30, 34, 36. Youngpoong has retained YK to act in connection with Youngpoong's criminal complaints, and in connection with a shareholder derivative suit unrelated to the Shareholder Suit underlying the Section 1782 Application. Youn Decl. ¶ 8. While Youngpoong has engaged the HwaHyun law firm, at which Declarant Jeong Kyoo Han is a partner, to assist with the Section 1782 efforts taking place in the United States, Youngpoong has not engaged YK for that purpose. *Id.* Ms. Kim's outreach was conducted for matters within the scope of YK's engagement, with the belief that neither Ms. Ha nor PedalPoint were represented in Korea, and with the understanding that Ms. Ha was not a party to any proceeding in Korea. *Id.* ¶¶ 9, 10. In reaching out to Ms. Ha, Ms. Kim did not violate Korean ethical rules. Declaration of Jeong Kyoo Han ("**Han Decl.**") ¶ 6.

[2] Ms. Ha debriefed co-Respondent Kevin Hahm on these contacts by early May 2025. *Id.* ¶ 28.

[3] Falsely grouping Mr. Park with Youngpoong, as Respondents do ("Applicant continued its inappropriate attempts to reach Ha as recently as earlier this month," ECF 41 at 10), does not count.

## ARGUMENT

### I. THE COURT SHOULD NOT ENTERTAIN THESE NEW ARGUMENTS.

Though cast as cause for case-ending, discovery-denying sanctions, Respondents held back this argument from their opening Motion, even though the vast majority of complained-of contacts happened before the Motion was filed.[4] Respondents offer no explanation for why, if relevant, they did not raise the alleged witness tampering in their voluminous original filing.[5] "[N]ew arguments may not be made in a reply brief." *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999) (refusing to consider new arguments raised in Reply); *see also*, *e.g.*, *Tolliver v. McCants*, No. 05 CIV. 10840, 2009 WL 1473445, at *3 (S.D.N.Y. May 26, 2009) ("[T]he court will not consider this new argument raised for the first time in a reply brief"), *aff'd*, 486 F. App'x 902 (2d Cir. 2012). The Court should not entertain this brand new argument at all.

### II. NO CONTACTS WITH MS. HA ARE SANCTIONABLE.

#### A. Korean Law and Ethical Rules Have Not Been Violated.

Respondents' argument that Youngpoong's entire Application should be dismissed based on the outreach to Ms. Ha is legally groundless. Mr. Yoon and Mr. Park were not acting with the authorization, direction, instruction, or even knowledge of Youngpoong. Youn Decl. ¶¶ 5, 7. Youngpoong cannot possibly be held responsible for their conduct. [6]

---

[4] The only outreach that Ms. Ha claims took place after the Motion was filed was that of DLLO Inc.'s Mr. Park. Ha Decl. ¶ 38, Youn Decl. ¶¶ 6, 7.

[5] Respondents perform a sleight of hand in claiming in their *brief* that "Ha later learned Kim is Applicant's outside counsel," with "later" tied to an August 5, 2025 text message from Ms. Kim. ECF 41 at 9. They cite to Paragraph 31 of Ms. Ha's Declaration, but Ms. Ha's testimony does not actually say anything about when and how she learned this information.

[6] Respondents attempt to make a scandalous fact out of Ms. Kim informing Ms. Ha on August 5 that she received Ms. Ha's phone number from Mr. Yoon (ECF 41 at 10). This is not evidence of any misconduct, much less that in March or April Ms. Kim directed Mr. Yoon to contact Ms. Ha.

Ms. Kim's outreach did not violate Korean law or ethics rules. Korean law does not prevent attorneys from contacting potential witnesses, and Korean ethical principles bar outreach to potential witnesses only in certain inapplicable circumstances. Han Decl. ¶ 5. Article 45 of the Korean Bar Association's Code of Ethics for Attorneys prohibits an attorney from contacting or negotiating with an *adverse party* who is represented by counsel for the *specific matter* as to which they were being contacted. *Id.* ¶ 6. Ms. Ha is not an "adverse party" in any Korean proceeding, a term that excludes witnesses or others who are not formally parties in the matter. *Id.* As far as Youngpoong is aware, Ms. Ha is not represented by *any* counsel in Korea, much less represented as to any of the matters for which Ms. Kim's law firm was engaged. Youn Decl. ¶ 10.[7]

**B. Dismissal of the Application Would be an Unjust and Unsupported Sanction.**

Respondents' sanctions demand finds no support in the law. ECF 41 at 11. To impose sanctions under its "inherent power," the Court must make a "a specific finding that an attorney acted in bad faith." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). It can only do this by finding "clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *Id.* Any conduct that "has some legal and factual support, considered in light of the reasonable beliefs of the attorney whose conduct is at issue" is colorable and therefore not sanctionable. *Id.* Ms. Kim's outreach to Ms. Ha comes nowhere near the requisite standard of misconduct. Han Decl. ¶ 6; Youn Decl. ¶¶ 7, 8.[8]

---

[7] Respondents cite but do not explain why New York's Rule of Professional Conduct 4.2 would apply to Ms. Kim. ECF 41 at 10. Even if it did, the analysis would be largely the same: Ms. Ha was not represented on the Korean matters that YK is handling. Youn Decl. ¶ 8.

[8] The egregious episodes of misbehavior dotting Respondents' authorities are both far afield of the matters before the Court here and illustrative of the exceptionally high bar for sanctions. For example, a court dismissed a case where the plaintiff offered financial incentives to a witness in exchange for perjured deposition testimony and threatened her with physical violence when she refused. *Lee v. Sass*, No. 04-70550, 2006 WL 799176, at *1, n.1 (E.D. Mich. Mar. 29, 2006).

Respondents also conflate two different bad faith analyses, arguing that the purportedly sanctionable conduct supports finding that Youngpoong has filed the Application in "bad-faith." ECF 41 at 5. But the two authorities Respondents cite in the Section 1782 context provide them no support. The Second Circuit has explained in *dicta* that a Section 1782 application could be denied if it "is made in bad faith, for the purpose of harassment." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995) (reversing district court's denial of Section 1782 application). Respondents do not argue that contacts with Ms. Ha mean that the Application *itself* was made in bad faith, or otherwise explain why permissible outreach on matters unrelated to the Application should have any bearing here. Respondents also rely on a case where a Section 1782 application was denied because the applicant failed to disclose material adverse decisions in the underlying foreign litigation, violating their duty of candor. *In re WinNet R CJSC*, 2017 WL 2728436, at *1 (S.D.N.Y. June 23, 2017). No such facts are present here.

## CONCLUSION

Respondents' Motion should be denied in its entirety.

Dated: October 1, 2025

Respectfully submitted,

By: /s/ Brian J. Fischer
Brian J. Fischer
Jason P. Hipp
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
bfischer@jenner.com
jhipp@jenner.com

*Attorneys for Youngpoong Corporation*