UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
                                                    :
IN RE APPLICATION OF *YOUNGPOONG*        :
*CORPORATION*                                    :          25-MC-00194 (JAV)
                                                    :
FOR AN ORDER PURSUANT TO 28 U.S.C.    :          <u>OPINION AND ORDER</u>
§ 1782 TO CONDUCT DISCOVERY FOR USE IN :
FOREIGN PROCEEDINGS                       :
                                                    :
-----------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

On August 7, 2025, Respondents PedalPoint Holdings, LLC ("PedalPoint"),

Mr. Kevin Hahm, and Ms. Janet Ha (collectively, "Respondents") filed a Motion to

Vacate the Court's July 2 and July 16 Orders and to Quash the Subpoenas Issued

Pursuant to the Same Orders ("Motion to Vacate and Quash").  ECF No. 30 ("Mot.")

at 1.  In the alternative to granting the Motion to Vacate and Quash, Respondents

requested the Court issue a protective order limiting the use of discovery.  ECF No.

31 ("Mem.") at 19-20.  For the following reasons, Respondents' Motion to Vacate and

Quash is **DENIED** and Respondents' motion for a protective order is **GRANTED**.

## BACKGROUND

On June 20, 2025, Applicant Youngpoong Corporation ("Applicant") filed an

amended application, seeking an *ex parte* order authorizing discovery from

PedalPoint and its corporate officers by means of subpoenas for use in a shareholder

derivative action in the Seoul Central District Court in the Republic of Korea (the

"Korean Proceeding").  *See* ECF No. 14 ("Am. Appl.") at 1; *see also* ECF No. 19 at 1.

In the Korean Proceeding, Applicant alleges that the directors of Korea Zinc—Yun Birm Choi, Jin-soo Noh, and Ki-deok Park (collectively, the "Directors")—breached their duty of care when they authorized PedalPoint to acquire Igneo Holdings LLC ("Igneo") because, *inter alia*, there was no reasonable or adequate basis for the sizable purchase price.  ECF No. 15 at 1-2.  PedalPoint acquired Igneo for approximately $442 million over two share purchases in July and November 2022. *Id.* at 2.

The proposed subpoenas sought documents and testimony, including a Rule 30(b)(6) deposition of PedalPoint, regarding details of the Igneo acquisition and the valuation of Igneo for use in the Korean Proceeding.  Am. Appl., ¶ 1; ECF No. 16, ¶¶ 9-17.  On July 2, 2025, the Court granted the application to serve discovery upon PedalPoint in the form of document and deposition subpoenas but denied the application, without prejudice, to the extent it applied to individual officers since no evidence as to where those officers resided was provided.  ECF No. 20 ("July 2 Order") at 4-6.

On July 11, 2025, Applicant renewed the application to take discovery from two PedalPoint officers, Mr. Hahm and Ms. Ha, and provided evidence that those officers reside in the Southern District of New York.  ECF No. 21 at 1-3; ECF No. 22, ¶¶ 4-5.  On July 16, 2025, the Court granted Applicant's renewed application because the three statutory requirements under 28 U.S.C. § 1782 were satisfied and the four discretionary *Intel* factors weighed in favor of granting the application. ECF No. 25 ("July 16 Order") at 2-5.

On July 25, 2025, defendants in the Korean Proceeding challenged Applicant's standing to bring and maintain that derivative action. ECF No. 32 ("A. Han Decl."), ¶ 24. Respondents filed the Motion to Vacate and Quash on August 7, 2025. Mot. at 1; *see generally* Mem.

## LEGAL STANDARDS

To obtain relief under 28 U.S.C. § 1782, applicants must fulfill the following requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020) (cleaned up). Once these requirements are met, Section 1782(a) gives a district court discretion to authorize the provision of judicial assistance to foreign or international tribunals, but it does not require a court to do so if the twin aims of the statute are not fulfilled. *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 83 (2d Cir. 2012) (citation omitted). The twin aims of the statute are to "provid[e] efficient means of assistance to participants in international litigation in our federal courts and encourag[e] foreign countries by example to provide similar means of assistance to our courts." *Certain Funds, Accts. &/or Inv. Vehicles v. KMPG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (citation omitted).

Additionally, when determining whether to grant a Section 1782 application, a district court must also consider the four *Intel* factors. *Gushlak v. Gushlak*, 486 Fed. App'x 215, 218 (2d Cir. 2012). Those factors are:

> (1) whether the person from whom discovery is sought is within the jurisdictional reach of the foreign tribunal;
> (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the tribunal to U.S. federal-court judicial assistance;
> (3) whether the § 1782 petition conceals an attempt to circumvent discovery rules of the foreign country or the United States; and
> (4) whether the discovery request is unduly intrusive or burdensome.

*Id.* (cleaned up) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004)).

After a district court grants a Section 1782 application to serve a subpoena, respondents can object to discovery by moving to quash pursuant to Federal Rule of Civil Procedure 45(d)(3). "Rule 45(d)(3) provides four mandatory and two discretionary bases for modifying or quashing a subpoena." *In re Republic of Türkiye*, No. 24-MC-557 (JPC), 2025 WL 2200159, at *5 n.2 (S.D.N.Y. Aug. 1, 2025). Accordingly, on a timely motion, a district court *must* quash or modify a subpoena when that subpoena "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv). Additionally, in order to protect a person subject to or affected by a subpoena, a district court *may* quash or modify a subpoena when that subpoena requires "(i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." *Id.* 45(d)(3)(B)(i)-(ii).

Ultimately, "[t]he burden of persuasion on a motion to quash a subpoena is borne by the movant." *In re Blackstone Partners, L.P.*, No. 04-CV-7757 (NRB), 2005 WL 1560505, at *2 (S.D.N.Y. July 1, 2005) (citation omitted).

## DISCUSSION

Respondents oppose the Section 1782 discovery that the Court granted on July 2 and July 16, 2025, arguing that the *Intel* factors weigh against production and that statutory requirements for disclosure are unmet because the discovery is not sought "for use" in a foreign proceeding and the applicant is not an "interested person." Mem. at 5-18. In the alternative, Respondents argue that the Court should either stay compliance with the subpoenas pending resolution of Applicant's standing in the Korean Proceeding or, if the Court grants the Section 1782 application, issue a protective order limiting the use of discovery to the Korean Proceeding. *See id.* at 18-27. Finally, Respondents argue that there are independent grounds to quash the subpoena, namely witness tampering. ECF No. 41 ("Reply") at 5-8.

### A.    The Statutory Requirements of Section 1782

Respondents argue that Applicant is not an "interested person" under the statute because Applicant lost its standing in the Korean Proceeding. Mem. at 6-7. According to Respondents, "[u]nder Article 403(1) of the Korean Commercial Act, a shareholder may bring a derivative lawsuit if it is a qualifying shareholder at the time of filing the lawsuit, but it needs to continue to own at least one share after filing the lawsuit to maintain standing." *Id.* at 6 (citing A. Han Decl., ¶¶ 31-34).

So, Respondents argue, "because Applicant "transferred all of [its] shares [in Korea Zinc] to its subsidiary [on March 7, 2025,] . . . Applicant los[t] its standing."  *Id.* at 6. Respondents conclude that, since Applicant "does not otherwise have an 'established right to provide evidence,' it is no longer an 'interested person' in the [Korean Proceeding]."  *Id.* at 7.

Applicant, however, counters that under the Korean Commercial Act and the Act on Electronic Registration of Stocks and Bonds of Korea, "a transfer of listed shares becomes effective only when the change of ownership is recorded in the corporation's electronic registration account book."  ECF No. 38 ("J.K. Han Decl."), ¶ 8.  Although Applicant transferred all of its original shares in Korea Zinc to its subsidiary on March 7, 2025, those shares were not recorded in Korea Zinc's electronic registration account book as transferred until March 14, 2025.  ECF No. 36 ("Opp'n") at 7-8; J.K. Han Decl., ¶¶ 8-9.  Applicant also purchased ten additional shares in Korea Zinc on March 10, 2025, and those shares were recorded in Korea Zinc's electronic registration account book as owned by Applicant on March 12, 2025.  Opp'n at 8; J.K. Han Decl., ¶¶ 8-9.  So, as a "legal matter, there was never any moment when [Applicant] held fewer than 10 Korea Zinc shares, leaving no basis to argue that [Applicant] lacks [Korean Proceeding] standing."  Opp'n at 8.

Besides simply repeating their original argument, Respondents do not engage with Applicant's argument that Applicant has standing in the Korean Proceeding. *See* Reply at 2-4.  Indeed, Respondents do not contest Applicant's portrayal of Korean standing law at all.  *Id.* at 3.

As it currently stands, Applicant is a litigant in the Korean Proceeding, and the Korean court has not dismissed their derivative action for lack of standing. Accordingly, the Court finds that Respondents have not carried their burden of persuasion to demonstrate that Applicant is not an interested person under Section 1782.  For the reasons previously stated in the Court's July 16 Order, the Court finds that Applicant is an interested person under Section 1782.  July 16 Order at 3.

Additionally, Respondents argue that since Applicant lacks standing in the Korean Proceeding, the discovery Applicant seeks cannot be "for use" in a foreign proceeding.  Mem. at 7.  The Second Circuit has denied Section 1782 applications where a litigant faces "a series of procedural hurdles under [foreign] law before it [could] present any evidence to [the foreign] court."  *In re BonSens.org*, 95 F.4th 75, 81 (2d Cir. 2024) (citation omitted).  As outlined above, however, the Court is not persuaded that Applicant's standing in the Korean Proceeding presents a disqualifying procedural hurdle.  Accordingly, Respondents' for-use argument fails as well.

## B.    The Four *Intel* Factors and the Twin Aims of Section 1782

The first *Intel* factor considers whether "the person from whom discovery is sought is a *participant* in the foreign proceeding" because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a *nonparticipant* in the matter arising abroad."  542 U.S. at 244 (emphasis added). Respondents are nonparticipants in the Korean Proceeding.  As such, there is a greater need for Section 1782 aid in this case.

The Second Circuit has at times, however, broadened the scope of the first *Intel* factor to consider not just whether the subject of the Section 1782 application is a nonparticipant in the foreign proceeding, but whether the information that the Section 1782 application seeks is obtainable from the opposing party in the foreign proceeding. *See, e.g.*, *Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 58-59 (2d Cir. 2024). In other words, the first *Intel* factor weighs against discovery "when the real party from whom [information is] sought . . . is involved in [the] foreign proceedings." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018). Courts in the Second Circuit have found that the first *Intel* factor weighs against discovery when the documents sought did not originate with the subject of the Section 1782 application and the subject held those documents derivatively as part of a safekeeping or advisory function. *See, e.g.*, *In re Saul Klein*, No. 23-MC-211 (PAE), 2023 WL 8827847, at *11 (S.D.N.Y. Dec. 21, 2023) (likening such subjects to "agents or archivists"), *aff'd sub nom. Klein v. Altara RK Invs. Ltd.*, No. 24-228-CV, 2025 WL 560105 (2d Cir. Feb. 20, 2025).

That is not the case here. Applicant seeks information from PedalPoint and two U.S.-based PedalPoint officers about PedalPoint's acquisition of Igneo. Due to its role in the acquisition, PedalPoint presumably independently owns or originated documents relating to "all aspects of the deal process, including valuation methodologies, due diligence, transaction terms, and negotiations." Opp'n at 10; *see* J.K. Han Decl., ¶ 34. Accordingly, "PedalPoint is not a bank or law firm merely holding records for a client." Opp'n at 11. Moreover, it is unclear how Applicant

could possibly obtain the kind of information that deposition testimony from Respondents can provide without Section 1782 aid, as the Directors in the Korean Proceeding cannot replace the PedalPoint officers themselves in testifying about the knowledge that PedalPoint officers did or did not possess about the Igneo acquisition. *See In re Application of 000 Promneftstroy for an Ord. to Conduct Discovery for use in a Foreign Proceeding*, 134 F. Supp. 3d 789, 792 (S.D.N.Y. 2015) (holding that the first *Intel* factor weighed in favor of granting the Section 1782 application when applicant sought to question "a non-party to the [foreign] action, about his knowledge of alleged wrongdoing with regard to [company] distributions, and that information reside[d] with him—not in the [foreign tribunal]"). Accordingly, the Court finds that the real parties from whom Applicant seeks discovery here are Respondents. The first *Intel* factor therefore weighs in favor of granting the application.

The second *Intel* factor requires consideration of "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of [the tribunal] to U.S. federal-court judicial assistance." *Gushlak*, 486 Fed. App'x at 218. Under this factor, "a district court's inquiry . . . should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Id.* at 1102. Respondents have not provided any

authoritative proof that the Seoul Central District Court would reject evidence obtained with the aid of Section 1782. *See* Mem. at 11-12, 12 n.5. Yet Respondents acknowledge that "no Korean court has explicitly stated that it opposes discovery obtained in a foreign jurisdiction unilaterally by a litigant." *Id.* at 12 n.5. The Court finds that the second *Intel* factor likewise weighs in favor of granting the application.

The third *Intel* factor requires consideration of "whether the § 1782 petition conceals an attempt to circumvent discovery rules of the foreign country or the United States." *Gushlak*, 486 Fed. App'x at 218 (internal quotation marks omitted). This factor concerns whether the application circumvents foreign "rules akin to privileges that *prohibit* the acquisition or use of certain materials," not "rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015). Accordingly, "to demonstrate circumvention, Respondents must illustrate not merely that the requested documents are not obtainable through [Korean] procedures, but that Applicant[] [is] engaged in a bad faith endeavor to misuse Section 1782." *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018).

The Court is not persuaded that Applicant is engaged in a bad faith endeavor to misuse Section 1782. Whether "a privilege exists under [Korean] law" that prohibits the requested discovery here "is far from clear." *In re Application for an Ord. Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 80 (2d Cir.

1997).  Absent "authoritative proof that [such discovery] will not be allowed," it is "not the place of this Court to analyze [foreign] law to consider the potential admissibility of the discovery."  *In re Safra*, No. 21-MC-640 (GHW) (JLC), 2022 WL 3584541, at *6 (S.D.N.Y. Aug. 22, 2022).  Respondents do not offer such "authoritative proof" that Applicant's discovery requests fall under one of Korea's discovery exceptions.  Mem. at 12-13; *see also* A. Han Decl., ¶ 85 ("[T]here exists a risk that the safeguards and exceptions for document production under Korean law may be bypassed."), ¶ 87 ("I cannot determine with certainty that any specific request in the document subpoena seeks such self (internal)-use documents"), ¶ 89 ("Again, I cannot determine with certainty that any specific request in the document subpoena seeks information that would be protected under attorney-client privilege or professional secrecy").  Consequently, the Court finds that the third *Intel* factor weighs in favor of granting the application.

The fourth *Intel* factor requires consideration of "whether the discovery request is unduly intrusive or burdensome."  *Gushlak*, 486 Fed. App'x at 218 (internal quotation marks omitted).  Under this factor, "a district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *Mees*, 793 F.3d at 302 (citation omitted).  Accordingly, "the determination whether a subpoena creates an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which

the documents are described, and the burden imposed." *In re Evenstar Master Fund SPC for & on behalf of Evenstar Master Sub-Fund I Segregated Porftfolio*, No. 20-MC-00418 (CS) (JCM), 2021 WL 3829991, at *13 (S.D.N.Y. Aug. 27, 2021) (cleaned up), *aff'd sub nom. In re Evenstar Master Fund SPC for & on behalf of Evenstar Master Sub-Fund I Segregated Portfolio*, No. 20-MC-418 (CS) (JCM), 2021 WL 5498283 (S.D.N.Y. Nov. 23, 2021). "To prevail, the movant cannot 'merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance.'" *Id.* (quoting *Kirschner v. Klemons*, No. 99-CV-4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005)). Indeed, "[g]eneral and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *In re Vale S.A.*, No. 20-MC-199 (JGK) (OTW), 2021 WL 311236, at *3 (S.D.N.Y. Jan. 29, 2021) (citation omitted).

Respondents argue that Applicant's requested discovery is unduly burdensome for four reasons. Mem. at 13-18. First, Respondents argue that deposing Mr. Hahm is unduly burdensome because he lacks any unique evidence or non-duplicative personal knowledge required to depose an executive under the apex doctrine. *Id.* at 13-15. Respondents cite declarations by PedalPoint's Chief Executive Officer, Mr. Mark Pope, as evidence of Mr. Hahm's lack of involvement in the decision to acquire Igneo. *Id.* at 13-14. Second, Respondents argue that deposing Ms. Ha is unduly burdensome because she too was uninvolved in the decision to acquire Igneo and deposing her would be duplicative of any testimony

PedalPoint's corporate designee provides. *Id.* at 14-15. Respondents again cite Mr. Pope's declarations as evidence. *Id.* Third, Respondents argue that Applicant's document requests are unduly burdensome because they are overbroad or improperly seek privileged information. *Id.* at 15-17. Fourth, Respondents argue that deposing PedalPoint's corporate designee is unduly burdensome because it will be duplicative of Applicant's document requests. *Id.* at 17-18.

Respondents' arguments are unavailing. With respect to the depositions of Mr. Hahm and Ms. Ha, Applicant provides evidence that Mr. Hahm possesses unique personal knowledge about the acquisition of Igneo through Mr. Woosik Shin's declaration. Opp'n at 20-21. Mr. Shin is a former employee of Korea Zinc, where he worked for 29 years in roles such as Head of Sales and Advisor before departing in 2024. ECF No. 37 ("Shin Decl."), ¶ 2. According to Mr. Shin's declaration, Mr. Hahm left GS Solutions, joined Korea Zinc in March 2022, and oversaw PedalPoint's acquisition of Igneo through his role as the Director of the Resource Recycling Department in 2022. *Id.*, ¶¶ 6-8. Mr. Shin's declaration is corroborated by news reports at the time of PedalPoint's acquisition of Igneo. *Id.*, ¶¶ 9-10. In November 2022 (the month PedalPoint finalized its acquisition of Igneo), Mr. Hahm informed Mr. Shin that he was relocating to the United States. *Id.*, ¶ 12. Mr. Hahm was subsequently appointed Chief Financial Officer of PedalPoint on January 1, 2023. *Id.* According to Mr. Shin's declaration, Ms. Ha also worked at GS Solutions before joining Korea Zinc's Resource Recycling Department, where she worked with Mr. Hahm on the Resource Recycling Planning

Team.  *Id.*, ¶ 13.  After the acquisition, Ms. Ha was also appointed to a position at PedalPoint as Senior Manager on July 1, 2023.  *Id.*  On these facts, the Court concludes that Applicant's requests for depositions of Mr. Hahm and Ms. Ha are not unduly burdensome.

Respondents have also failed to persuade the Court that Applicant's document requests are overbroad.  Respondents do not set forth with particularity the manner and extent of the burden and the negative consequences of insisting on compliance.  *See* Mem. at 13-18.  In particular, Respondents have not adduced any evidence regarding the volume of responsive documents or the costs of processing and production.  In the event that burden issues arise with respect to responses to specific requests, the parties should meet and confer to discuss appropriate limitations to the requests and, if those prove unsuccessful, apply to the Court for further relief.

Respondents contend that Applicant's document requests are overbroad because they request information from 2020 (one year before PedalPoint was registered in the U.S.) through November 2024.  *Id.* at 15.  When PedalPoint acquired Igneo, however, it also acquired its assets.  So, "since PedalPoint's November 23, 2022 Unit Purchase Agreement with Igneo contains no provision transferring assets out of Igneo," then "ownership of Igneo's assets (including books and records) passed indirectly to PedalPoint through the transfer of units."  Opp'n at 18 n.13.  Accordingly, it is entirely reasonable to request documents from 2020

because such documents could plausibly relate to the acquisition of Igneo and the valuation issues that are the subject of the Korean Proceeding.

Respondents also point out that certain of the document requests seek "all" documents on a particular topic.  Mem. at 15.  Yet those topics are tailored to the specific issue in dispute, namely the documents that concern the basis for, or support the determination of, the purchase price and valuation of Igneo.  These documents are therefore of core relevance to the issue to be litigated.

Respondents further argue that several of Applicant's document requests are improper because they may call for the production of documents protected by attorney-client privilege or are confidential.  *Id.* at 16.  The document requests on their face do not necessarily call for the production of documents subject to the attorney-client privilege.  To be clear, however, nothing in this Opinion and Order precludes Respondents from withholding privileged material pursuant to Rule 45(e)(2).

Finally, the Court is not persuaded that Applicant's request to depose PedalPoint's corporate designee is unduly burdensome because it will produce duplicative information.  As Applicant points out, "Rule 30(b)(6) depositions occur precisely because they allow a corporate witness 'to testify as to the interpretation of papers, and any underlying factual qualifiers of those documents (i.e., information which the defendant knows but is not apparent on the face of the documents)."  Opp'n at 22 (citing *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010)).  Accordingly, "A party should not be prevented from questioning a live

corporate witness in a deposition setting just because the topics proposed are similar to those contained in documents provided or interrogatory questions answered." *Dongguk Univ.*, 270 F.R.D. at 74 (citation omitted). Consequently, the Court finds that the fourth *Intel* factor weighs in favor of granting the application.

In light of the preceding considerations, the Court concludes that granting the application would promote the twin aims of the statute by (i) providing efficient means of assistance in our federal courts to participants in international litigation and (ii) encouraging foreign countries by example to provide similar means of assistance to our courts.

## C.    Staying Compliance with the Subpoenas

In the alternative, Respondents argue that the Court should stay compliance with the subpoenas pending resolution of Applicant's standing in the Korean Proceeding. *See* Mem. at 18-19. Respondents have not provided any cases where a court has granted a stay of compliance with subpoenas issued in a Section 1782 application pending a dispositive motion in the foreign proceeding, *see* Mem. at 18-19, and the Court is not aware of any.

The Court declines to exercise its discretion to stay compliance. Respondents' argument is premised on the contention that Applicant lacks standing in the Korean Proceeding. *See id.* at 18-19. For reasons already discussed, *supra* Discussion Section A, Respondents have not made a strong showing that Applicant lacks standing in that suit. Respondents also claim they would be subjected to irreparable harm if required to comply with the subpoena, in the form of "having to

shoulder the burden and costs of a fishing expedition." *Id.* at 19. The time and resources required to comply with a subpoena, however, do not constitute irreparable harm. *United States Equal Emp. Opportunity Comm'n v. AAM Holding Corp.*, No. 24-MC-103 (LGS), 2024 WL 3710151, at *4 (S.D.N.Y. Aug. 7, 2024).

## D.   **Grant of Protective Order**

Respondents request the Court issue a protective order limiting the use of discovery to the Korean Proceeding. Mem. at 19-27. Respondents argue that compelling Respondents to testify would violate Respondents' privilege under Korean law, including the privilege against self-incrimination. *See id.* at 19-21. Since "Korean criminal authorities [are] overseeing the (potential) investigation in connection with" a related, ongoing criminal complaint against the Directors, then Applicant could provide discovery obtained from the application to those authorities in violation of Respondents' privilege without an appropriate protective order. *See id.* Respondents also argue that Applicant cannot provide discovery obtained from the application to the Korean criminal authorities or the tribunal overseeing the criminal complaint because Applicant does not separately, with respect to the potential investigation and the criminal complaint, satisfy the statutory requirements of Section 1782 and the *Intel* factors counsel against doing so. *See id.* at 21-27.

This Court has the discretion to "prescribe the practice and procedure" for production of material under Section 1782, including crafting a protective order under Rule 26(c) limiting the use of produced materials. *In re Accent Delight Int'l*

*Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017).  Such an order is appropriate here.  The discovery sought concerns sensitive business and other proprietary information. Respondents have demonstrated good cause for limiting its use to the Korean Proceeding for which it has been sought.

The parties shall submit to the Court a proposed protective order in accordance with Rule 5.N of the Court's Individual Rules and Practices in Civil Cases within one week of the date of this Opinion and Order.

### E.    Witness Tampering

Respondents request the Court to sanction Applicant by dismissing Applicant's entire application because "Applicant has [tried] to buy favorable testimony from one of the Respondents through three separate individuals."  Reply at 1.  Respondents argue that Applicant's conduct constitutes witness tampering and violations of the ethical rules for attorneys in both New York and the Republic of Korea.  *Id.* at 6 n.5, 7.  Accordingly, Respondents conclude, such bad-faith conduct merits dismissal.  *Id.* at 1.

According to Respondents, a former PedalPoint analyst, Mr. Ji-woong Fred Yoon, text messaged Ms. Ha several times asking to meet between March and April 2025.  *Id.* at 6; ECF No. 44 ("Ha Decl."), ¶¶ 5, 13.  Ms. Ha met Mr. Yoon on April 17, 2025, and tried to persuade Ms. Ha that she could "share the prize money" if she testified or helped provide evidence against Korea Zinc, PedalPoint, or Mr. Choi in a potential suit about Mr. Choi's alleged misconduct at Korea.  Reply at 6; Ha. Decl., ¶¶ 21-22.  Mr. Yoon also stated that he was working with a man named Mr. Yoon-

bae Park, who, according to Mr. Yoon, is a minority shareholder of Korea Zinc attempting to initiate an investigation into Mr. Choi's alleged misconduct at Korea Zinc. Reply at 6-7; Ha. Decl., ¶ 19. Mr. Yoon also insinuated that Ms. Ha could be implicated in criminal investigations in the Republic of Korea. Reply at 6; Ha. Decl., ¶ 24. At some point afterwards, Mr. Yoon gave Ms. Ha's contact information to Ms. Young Ji Kim. Reply at 6; Ha. Decl., ¶ 36.

Ms. Kim is an attorney for the YK Law Firm. Ha. Decl., ¶ 30. The YK Law Firm is outside counsel to Applicant in another shareholder derivative lawsuit Applicant filed against Korea Zinc in the Republic of Korea that is not the Korean Proceeding. *Id.*, ¶ 31. YK Law Firm also represents Applicant in its criminal complaint against the Directors regarding the Igneo acquisition. *Id.*

On June 1, 2025, and July 3, 2025, Ms. Kim messaged Ms. Ha on LinkedIn because she wanted to "talk briefly about PedalPoint[.]" *Id.*, ¶¶ 30, 32, 34. Ms. Ha did not see the messages until August 2025 and she did not respond. *Id.*, ¶¶ 32, 34. On August 5, 2025, Ms. Kim text messaged Ms. Ha to "'ask . . . a few questions about PedalPoint and Igneo Holdings." *Id.*, ¶ 36. Ms. Ha did not respond, and she blocked Ms. Kim on her phone. *Id.*

On September 2, 2025, Mr. Park text messaged Ms. Ha. *Id.*, ¶ 38. Mr. Park introduced himself as a "shareholder of Korea Zinc and representative for an investment company named DLLO Inc." *Id.* (quotation marks omitted). Mr. Park wrote, "Korea Zinc's investment in Igneo that took place three years ago is creating multiple issues" and asked to meet Ms. Ha in person. *Id.*, ¶¶ 39, 42. Ms. Kim did

not respond, but she believes that Mr. Park wanted to encourage her to side with him and Applicant regarding litigation in the Republic of Korea about the Igneo acquisition.  *Id.*, ¶¶ 47, 49.

Witness tampering occurs when a person "knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to . . . influence . . . the testimony of any person in an official proceeding."  18 U.S.C. § 1512(b)(1).  An "official proceeding" is "a proceeding before a judge or court of the United States." *Azima v. Dechert LLP*, No. 22-CV-8728 (PGG) (JW), 2024 WL 4665106, at *24 (S.D.N.Y. Sept. 26, 2024) (quoting 18 U.S.C. §1515(a)(1)(A)).  Accordingly, foreign court proceedings do not "meet the definition of 'official proceeding' under 18 U.S.C. §1515."  *Id.* (citation omitted).

In any event, Respondents have not made a plausible case that Applicant has engaged in unethical behavior warranting the quashing of the subpoenas.  First, Respondents have not provided sufficient information to conclude that either Mr. Yoon or Mr. Park are agents of Applicant such that their conduct can be attributed to Applicant.  According to Applicant, "Mr. Yoon and Mr. Park were not acting with the authorization, direction, instruction, or even knowledge of [Applicant]."  ECF No. 48 ("Sur-Reply") at 3 (citing ECF No. 48-1 ("Youn Decl."), ¶¶ 5, 7).  Moreover, the litigation about which Mr. Yoon, Ms. Kim, and Mr. Park reached out to Ms. Ha is either occurring or will occur in the Republic of Korea.  In other words, Mr. Yoon and Mr. Park did not attempt to influence Ms. Ha's testimony in connection with

the 1782 application.  So, asking Ms. Ha to act as a witness or provide evidence in

such a foreign proceeding cannot constitute witness tampering under United States

law.  Finally, Ms. Kim is not subject to New York's Rules of Professional Conduct as

she does not appear to practice in New York, nor anywhere else in the United

States.  Accordingly, Respondent has not demonstrated that Applicant has engaged

in the kind of bad-faith conduct that merits dismissal of its application.

## CONCLUSION

Accordingly, Respondents' Motion to Vacate and Quash is **DENIED**.

Respondents' motion for a protective order is, however, **GRANTED**.  The Clerk of

Court is directed to terminate ECF No. 30.

SO ORDERED.

Dated:  November 19, 2025
        New York, New York

JEANNETTE A. VARGAS
United States District Judge