1155 AVENUE OF THE AMERICAS, NEW YORK, NY 10036-2711

JENNER & BLOCK LLP

February 9, 2026

Brian J. Fischer
212.891.1629
BFischer@jenner.com

Hon. Jeannette A. Vargas
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re: *In re Ex Parte Application of Youngpoong Corporation* (1:25-mc-00194-JAV)

Dear Judge Vargas:

We represent Applicant Youngpoong Corporation in the above-referenced action. Applicant files this letter-motion to compel Respondent PedalPoint Holdings, LLC ("PedalPoint") to collect and produce responsive communications on email servers ("Servers") maintained by PedalPoint's parent company, Korea Zinc Company, Ltd. ("Korea Zinc"), that PedalPoint regularly used for business communications during the relevant period. This order is necessary for PedalPoint to fully comply with its obligation to produce documents responsive to the subpoena, ECF No. 4-1, in compliance with the Opinion and Order of November 19, 2025, *see* ECF No. 50.

Since the Second Circuit denied PedalPoint's motion to stay pending its appeal of the denial of the motion to quash, ECF No. 74, Applicant has received only 2,590 documents from PedalPoint, a small fraction of the responsive documents PedalPoint has indicated are forthcoming.[1] While Applicant understands additional documents are forthcoming, a gating issue has arisen that affects the scope of collection and review: PedalPoint is refusing to conduct searches for responsive communications on the Servers it used in the ordinary course during the period relevant to this dispute. The parties have engaged in good-faith efforts to resolve this issue, including via numerous meet-and-confers and subsequent email correspondence, but remain at an impasse.[2]

---

[1] As depositions are scheduled in mid-March before an April 2 hearing in the Korean Proceeding, Applicant needs a complete production well before that point to allow for sufficient time to review and analyze documents, complete necessary translations, and prepare for depositions.

[2] Applicant raised the issue of PedalPoint's servers in meet-and-confers, which also covered various other topics, on January 9 (11:30 am, about one hour); January 14 (4:45 pm, about one hour); January 20 (2 pm, about one hour); January 23 (3 pm, about 15 minutes); February 2 (2 pm, about one hour); and February 6 (3 pm, about one hour). The February 2 meet-and-confer, at which Applicant confirmed impasse and disclosed that it would be seeking relief from the Court, included the following attorneys: for Applicant, from Jenner & Block: Brian Fischer, Jason Hipp, Nikita Lalwani, and Julian Buff; for PedalPoint, from Quinn Emanuel: Corey Worcester, Lucas Bento, Linda Moon, Lauren Yeager, and Isabelle Sohn.

February 9, 2026
Page 2

PedalPoint's current position is irreconcilable with its previous arguments in support of quashing the subpoena: that PedalPoint was merely Korea Zinc's "investment vehicle," and that Applicant should seek PedalPoint-related discovery from its parent, Korea Zinc. ECF No. 41 at 4. On appeal, PedalPoint continues to make this argument. *See* No. 24-3100, ECF No. 31.1 at 15 (2d Cir. Jan. 27, 2026). Now, faced with a production obligation, PedalPoint claims that there is an insurmountable wall between itself and Korea Zinc.

PedalPoint claims that it has no obligation to produce certain emails and files sent to and from its "pedalpointllc.com" email domain from September 2022 to September 2024, because the Servers were managed by Korea Zinc during that time period. The Servers should have emails from the periods before, during, and after the 2022 acquisition at issue in this matter. This understanding has been confirmed by PedalPoint CEO Mark Pope, who testified that **"All documents related to the deal process, including any negotiations or valuation of the deal, would be on the Korea Zinc server and email."** Pope Suppl. Decl. ¶ 6, ECF No. 43 (emphasis added).[3] Despite the unambiguous import of the communications located on its parent company's servers, and despite its obligation under the subpoena to produce responsive documents "created, modified, used, or in existence during the period from January 1, 2020, to November 23, 2024," *see* ECF No. 16-1, Ex. A at 5, PedalPoint refuses to collect from the Servers. Despite conferring about the issue for weeks, PedalPoint did not even ask Korea Zinc for access to the Servers until after the parties' February 2, 2026 meet-and-confer. This evening, counsel for PedalPoint informed Applicant that Korea Zinc would not provide access, purportedly due to "strict information governance protocols" Korea Zinc follows, which prohibits access to subsidiaries (even though it is their own data). PedalPoint has attempted two justifications for its refusal to collect from the Servers. Neither is persuasive.

First, PedalPoint claims it has fulfilled its obligations under the subpoena via ad hoc email collection from custodians' computers, which may have captured some (perhaps even many) of these emails. But such ad hoc collection has resulted in material production gaps, including:

- PedalPoint has not retained any documents from Joon-Young Kang, CEO during the Igneo acquisition. Mr. Pope testified that Kang was "responsible for negotiating the acquisition" and that he "continued to use a Korea Zinc email" when doing so. Pope Suppl. Decl. ¶ 6, ECF No. 43. As PedalPoint has not retained his documents, the *only* reliable way for Applicants to access the documents and communications of PedalPoint's CEO related to the 2022 acquisition is via the Servers.[4]

---

[3] In addition to "pedalpointllc.com," several PedalPoint custodians used the email domain "koreazinc.co.kr" prior to, and perhaps even after, September 2022, when the pedalpointllc.com domain began to be used. Whatever the domain name, PedalPoint's legal obligation remains the same: it must produce relevant documents of its custodians stored on servers that it has the legal authority to access.

[4] Instead of collecting from the Servers, PedalPoint tried contacting Mr. Kang personally, but used the wrong address. Applicant provided updated contact information for Mr. Kang based on public records searches, but PedalPoint has refused to undertake renewed efforts to contact him. The logistical difficulties

February 9, 2026
Page 3

- Respondents Kevin Hahm and Janet Ha frequently used their koreazinc.co.kr email accounts even after moving from Korea Zinc to PedalPoint. Among productions to date, Applicant has identified 235 emails sent or received via Hahm's koreazinc.co.kr email account, and 46 emails sent or received via Ha's. It is reasonable to expect that they would have had many more communications with Korea Zinc personnel that are yet undisclosed to Applicant and accessible only on the Servers.
- While PedalPoint collected some of the pedalpointllc.com emails from individuals' laptops, PedalPoint's counsel acknowledged that these ad hoc collection attempts would not have collected communications that custodians intended to delete by "double-deleting" them.[5] In a dispute centered around allegations of wildly inflated overpayments and diverting corporate assets for personal use, it is reasonable to expect that PedalPoint employees may not have wanted to preserve all email communications. Further, email hygiene on individual laptops varies by person, and ad hoc collection is necessarily inefficient and ineffective.

Second, PedalPoint claims to lack possession, custody, or control of the Servers. Specifically, PedalPoint claims it has no obligation to collect and produce responsive PedalPoint communications maintained on the Servers because PedalPoint's IT department is separate from Korea Zinc's IT department; Korea Zinc sets the data retention policies that apply to the Servers; and PedalPoint does not control the records since they are within the physical possession of its parent company. This argument is likewise mistaken. The "possession, custody, or control" standard is construed broadly to include the "practical ability" to obtain "documents from another, irrespective of [the] legal entitlement to the documents." *Raimey v. Wright Nat'l Flood Ins. Co.*, 76 F. Supp. 3d 452, 470 (E.D.N.Y. 2014) (quotation marks omitted); *id.* (affirming order of sanctions on defendant for failing to obey discovery orders when defendant "offered no proof whatsoever that it did not have the practical ability . . . to obtain the documents"). Having "access to documents when the need arises in the ordinary course of business" is a sufficient ground for establishing "control" for purposes of Rule 45. *DeSmeth v. Samsung Am., Inc.*, 1998 WL 74297, at *10 (S.D.N.Y. Feb. 20, 1998) (ordering U.S.-based subsidiary to produce documents within control of Korean parent company). That is especially true where the documents "relate to" the regular subject matter of the respondent's business. *Cooper Indus., Inc. v. Brit. Aerospace, Inc.*, 102 F.R.D. 918, 919–20 (S.D.N.Y. 1984) (ordering documents produced by corporate affiliate).

That standard is met here. From its inception in 2022 until September 2024, PedalPoint personnel engaged in routine business communications using the Servers. Simply put, PedalPoint could not conduct business without access to them. And PedalPoint has admitted that, even though it now

---

of even locating Mr. Kang only underscore why ad hoc retrievals of emails from physical computers are an inadequate replacement for collection from the Servers.

[5] "Double-deleting" refers to permanent data removal by deleting it from a primary location (such as an email inbox) and then deleting it again from the secondary location that stores the removed data (such as a "trash" folder).

manages its own server, if any PedalPoint employee still uses an email account controlled by Korea Zinc, they can contact Korea Zinc's IT department in the usual course of business for help. As was the case in *Cooper Industries*, PedalPoint's documents and emails stored on Korea Zinc's servers "relate to" the business that "[PedalPoint] works with every day." 102 F.R.D. at 919. Given these facts, "it is inconceivable that [PedalPoint] would not have access to these documents and the ability to obtain them for its usual business."[6] *Id.* at 919–20.

Respondents' insistence that their lack of physical custody excuses them from their production obligation has no basis in law. Subpoena respondents are routinely compelled to "identify fully and produce the email records stored on" a third-party server, even one that has since been "shut down," so long as there is a "practical ability to obtain documents from" it. *Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*, 2016 WL 2640351, at *5–6 (W.D.N.Y. May 10, 2016). It is implausible that PedalPoint truly lacks access, because that would suggest it has violated numerous legal obligations. For example, "[m]aintaining accurate books and records . . . is a duty" PedalPoint owes "to those with whom [it] does business." *United States v. Ecker*, 1986 WL 9787, at *3 (S.D.N.Y. Aug. 29, 1986); *see also Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 148 (S.D.N.Y. 2011) ("A corporation is presumed to have custody and control of its own records ordinarily required in the course of business, and the burden of proving otherwise is on the corporation." (quotation marks and bracket omitted)), *aff'd*, 2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011). Further, the Treasury Code requires all taxpayers to "retain those books and records (including computer files) that are sufficient to establish . . . matters required to be shown in every tax return." *M&T Mortg. Corp. v. Miller*, 2007 WL 2403565, at *9 (E.D.N.Y. Aug. 17, 2007). Here, the outsourced server continues to exist under the literal custody of PedalPoint's controlling parent; surely, PedalPoint can access it when legal duties require.

Accordingly, Applicant respectfully requests that the Court order Respondents to collect and produce responsive PedalPoint communications stored on the Servers. We appreciate the Court's attention to this matter.

Respectfully Submitted,

Brian J. Fischer

---

[6] Throughout the meet-and-confer process, PedalPoint has made ambiguous and inconsistent representations about the extent to which PedalPoint employees sent communications using the Servers. For example, PedalPoint stated for the first time in a recent meet-and-confer that PedalPoint employees "rarely" used the "pedalpointllc.com" server hosted by Korea Zinc, despite their previous representation that between 2022 and 2024, PedalPoint employees used that server to send and receive emails—a substantial and near-daily activity in any functioning company. In any event, the precise degree to which PedalPoint utilized the Servers is irrelevant: so long as PedalPoint used the Servers in the ordinary course of its business, it has an obligation to collect and produce responsive material stored there.