**quinn emanuel** trial lawyers | washington, dc

295 Fifth Ave, New York, New York 10016 TEL (212) 849 7000 FAX (212) 849 7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7552**

WRITER'S EMAIL ADDRESS
**lucasbento@quinnemanuel.com**

February 11, 2026

**VIA ECF**
Honorable Jeannette A. Vargas
United States District Court
Southern District of New York
500 Pearl St., Room 703
New York, NY 10007

    Re:    <u>In Re Application of Youngpoong Corp., for an Order Seeking Discovery Pursuant to 28 U.S.C. § 1782</u>, Case No. 1:25-mc-00194-JAV

Dear Judge Vargas:

    We represent Respondents PedalPoint Holdings, LLC ("PedalPoint"), Kevin Hahm, and Janet Ha in the above-referenced matter, and write in response to Applicant Youngpoong Corporation's motion to compel production of documents from email servers owned, maintained, and controlled by Korea Zinc Corporation ("Korea Zinc"), a non-party to this proceeding (Dkt. 75). The Court should deny Applicant's motion as it is all but a lengthy complaint that it cannot force PedalPoint, a third party to a proceeding abroad, to collect and produce documents it does not have in its possession, custody, or control.

**I.    BACKGROUND**

    PedalPoint is a Delaware limited liability company and subsidiary of Korea Zinc, a publicly traded corporation organized under the laws of the Republic of Korea. During PedalPoint's early days, some former Korea Zinc employees who had transitioned to PedalPoint continued to use Korea Zinc email accounts (koreazinc.co.kr) hosted on servers maintained by Korea Zinc. In September 2022, PedalPoint employees began using the "pedalpointllc.com" domain, which was created and hosted on servers maintained by Korea Zinc's IT department in Korea. In September 2024, PedalPoint created its own email domain (pedalpoint.co), which it owned and maintained on its own independent email infrastructure. This progression reflects the natural evolution of PedalPoint as a nascent company with little infrastructure to a more mature entity with its own corporate system.

    Since the Second Circuit denied Respondents' motion for a stay pending appeal on January 6, 2026, PedalPoint has engaged in extensive, good-faith discovery efforts. PedalPoint has collected documents from all custodians within its possession, custody, and control. It has also worked with individual custodians who used email domains hosted on Korea Zinc's servers during the relevant time period to collect those emails manually, one-by-one, without accessing the servers. To date, PedalPoint has collected just under one million documents and reviewed

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

hundreds of thousands, of which thousands were produced. And PedalPoint has done so to meet an extraordinarily aggressive production schedule that Applicant pushed for on the grounds that it needed discovery in time for a hearing in the Korean proceeding on January 29, 2026—which Applicant did not have the courtesy to inform Respondents was adjourned to April 2, 2026, during the parties' January 23, 2026 meet-and-confer—by which point Respondents had already committed substantial resources (including the deployment of 20 first-level document reviewers) to meet Applicant's demanding timeline at great expense to Respondents. Despite Applicant's lack of forthcomingness and the hearing's postponement, Applicant continues to make rolling productions on an aggressive discovery schedule.

At the parties' February 2, 2026 meet-and-confer, Applicant questioned whether PedalPoint had requested Korea Zinc's permission to access to its servers. PedalPoint promptly contacted Korea Zinc to request access. On February 9, 2026, Korea Zinc declined, citing its information governance protocols that restrict subsidiary access to its IT infrastructure. This refusal reflects Korea Zinc's institutional policies as a publicly traded company—not any failure of effort by PedalPoint.

## II.   ARGUMENT

A party responding to a subpoena is obligated to produce only documents within its "possession, custody, and control." Fed. R. Civ. P. 45(a)(1)(A)(iii). Documents are within a party's control when it has the legal right, authority, or practical ability to obtain the documents. *Fitzpatrick v. Am. Int'l Grp., Inc.*, 2013 WL 9948284, at *12 (S.D.N.Y. May 29, 2013); *Leser v. U.S. Bank Nat. Ass'n*, 2010 WL 1945806, at *1 (E.D.N.Y. May 13, 2010) (collecting cases). PedalPoint has no such legal right, authority, or practical ability here. Korea Zinc—a separate corporate entity organized under Korean law with its own regulatory and governance obligations—has declined to provide PedalPoint access to its servers. That refusal is dispositive.

The burden to show otherwise falls on Applicant. "The party seeking to compel a subsidiary to produce the documents of its foreign parent has the burden of showing that the documents are within the local subsidiary's control." *Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 141 (E.D.N.Y. 2009) (citing *State of New York v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259 (N.D.N.Y.2006)). "'Access' and 'ability to obtain documents' have been found where 'documents ordinarily flow freely between' parent and subsidiary." *Id.* (quoting *Hunter Douglas, Inc. v. Comfortex Corp.*, 1999 WL 14007, at *3 (S.D.N.Y. Jan. 11, 1999)).

Applicant has not met this burden. Applicant offers no evidence that documents or information "flow freely" between PedalPoint and Korea Zinc. Far from it, the only factual assertion Applicant makes regarding PedalPoint's relationship with Korea Zinc is that certain of PedalPoint's employees use email addresses hosted on Korea Zinc's servers and "can contact Korea Zinc's IT department . . . for help." Dkt. 75 at 4. But the ability to receive technical assistance from a parent corporation's IT helpline does not come close to establishing the kind of free flow of information required to show a subsidiary's access to or control over its parent's documents. *Cf. Huang v. iTV Media, Inc.*, 2017 WL 706194, at *7 (E.D.N.Y. Feb. 22, 2017) (finding control upon factual evidence that "[subsidiary] and parent shared documents, particularly those relating to Plaintiff's employment which bear upon claims in this litigation.").

Instead of pointing to any specific facts about PedalPoint's relationship with Korea Zinc—such as any information sharing agreement between PedalPoint and Korea Zinc or whether the two transact business in the ordinary course, etc.—Applicant resorts to conclusory assertions and inapposite legal duties. Applicant baselessly claims that Korea Zinc's documents "relate to business that PedalPoint works with every day."[1] Dkt. 75 at 3–4 (cleaned up). But Applicant fails to even describe PedalPoint's business or explain what it has to do with Korea Zinc's documents. *See id.* Applicant also invokes general duties of corporations to maintain books and records and even tax recordkeeping obligations—all without explaining how these vague duties support a finding that PedalPoint has possession, custody, or control over documents held by its Korean parent.[2] *Id.* at 4.

Applicant contends that PedalPoint's current position is "irreconcilable" with its prior arguments that PedalPoint was Korea Zinc's "investment vehicle." Dkt. 75 at 2. This argument conflates two distinct legal concepts. PedalPoint's position in its Motion to Quash that the true target of Applicant's Section 1782 application was Korea Zinc concerned the relevance and purpose of Applicant's discovery requests—not PedalPoint's possession, custody, or control over Korea Zinc's servers. It can *both* be true that (a) PedalPoint was an investment vehicle for Korea Zinc and any relevant information PedalPoint possesses would also be possessed by Korea Zinc; *and* (b) PedalPoint lacks the *legal* authority or the practical ability to access documents that are stored on Korea Zinc's servers. At no point did PedalPoint represent that it could control Korea Zinc.

PedalPoint's lack of access to Korea Zinc's servers is entirely consistent with its prior representations. First, Korea Zinc created PedalPoint *solely* to serve as an acquisition vehicle at the time it acquired Igneo. That PedalPoint personnel used Korea Zinc's email servers prior to 2024 confirms the skeletal nature of PedalPoint's operation in its early days. It had little independent infrastructure beyond serving as an entity through which Korea Zinc acquired Igneo.

Second, PedalPoint's lack of access to Korea Zinc's email servers—which inevitably hold the communications and documents relevant to the decision to acquire Igneo by the Korea Zinc directors named in the Korean proceeding underlying Applicant's Section 1782 application—only confirms that the discovery Applicant seeks is in Korea and not in PedalPoint's possession. Applicant cannot have it both ways: it cannot argue that PedalPoint and Korea Zinc are so

---

[1] This conclusory assertion appears designed to invoke the "practical ability" standard. But, as Applicant's own authority demonstrates, that standard requires *actual* access to documents in the ordinary course. *See Raimey v. Wright Nat'l Flood Ins. Co.*, 76 F. Supp. 3d 452, 470 (E.D.N.Y. 2014) (finding "practical ability" where an insurer sought documents from a vendor it had hired and paid to prepare reports for the insurer's use in adjusting a claim). Here, by contrast, Korea Zinc is not PedalPoint's vendor, documents at issue are not reports prepared for PedalPoint, and Korea Zinc affirmatively refused access.

[2] The other cases Applicant cites are also inapposite. Applicant has not shown evidence that PedalPoint and Korea Zinc "operate as one, demonstrate[] access to documents in the ordinary course of business, and [have] an agency relationship," *DeSmeth v. Samsung Am., Inc.*, 1998 WL 74297, at *9 (S.D.N.Y. Feb. 20, 1998), or that the documents it seeks are related to business that PealPoint "works with" Korean Zinc on a daily basis, *Cooper Indus., Inc. v. Brit. Aerospace, Inc.*, 102 F.R.D. 918, 919 (S.D.N.Y. 1984).

intertwined that documents flow freely between them, while also pursuing separate discovery from Korea Zinc in other proceedings.

Applicant criticizes PedalPoint's collection as "ad hoc," but PedalPoint has employed standard, defensible collection methodologies. PedalPoint has:

- Collected from all custodians proposed by Applicant who remain PedalPoint's employees;
- Collected from non-custodial sources including SharePoint, Dropbox, and shared drives;
- Undertaken efforts to collect from custodians' email accounts hosted on Korea Zinc's servers; and
- Made good-faith efforts to contact former employees, including Joon-Young Kang.

In fact, PedalPoint went above and beyond its discovery obligations as to Korea Zinc-controlled email accounts by undergoing the onerous process of manually downloading *each and every* Korea Zinc email from the relevant time period from the custodians' laptops.  That collection method may result in some documents falling through owing to "hygiene on individual laptops var[ying] by person,"[3] but it does not confer possession, custody, or control on PedalPoint.  Applicant's grumbles of "production gaps" do not establish that PedalPoint has failed to meet its discovery obligations; they establish only that Applicant seeks documents PedalPoint does not possess.

As to Mr. Kang, Applicant's account is incorrect.  As PedalPoint represented to Applicant, Mr. Kang left Korea Zinc before there was any litigation hold over his documents and emails.  As such, Mr. Kang's files were deleted 90 days after his departure per company policy.  Despite this, PedalPoint attempted to contact Mr. Kang multiple times, but he did not respond.  When Applicant provided what it believed to be updated contact information for Mr. Kang based on public records searches, PedalPoint informed Applicant that it had no objection to Applicant contacting Mr. Kang directly.  It is unclear whether Applicant has done so.  Applicant cannot fault PedalPoint for Mr. Kang's non-responsiveness while simultaneously declining to contact him.

In any event, Applicant's own evidence confirms why Mr. Kang's documents are not within PedalPoint's control.  Mr. Mark Pope testified that Mr. Kang "continued to use a Korea Zinc email" when negotiating the acquisition.  Pope Suppl. Decl. ¶ 6 (Dkt. 43).  Communications sent and received through Korea Zinc's email system, by an individual using Korea Zinc credentials, are not within PedalPoint's possession, custody, or control.  That Mr. Kang held a title at PedalPoint does not transform Korea Zinc's email archives into PedalPoint's property.

For these reasons, Applicant's letter motion to compel discovery from Korea Zinc's servers should be denied.

Respectfully submitted,

/s/ *Lucas Bento*

Lucas Bento

---

[3]  Applicant's off-hand comment that, "[i]n a dispute centered around allegations of wildly inflated overpayments and diverting corporate assets for personal use, it is reasonable to expect that PedalPoint employees may not have wanted to preserve all email communications" is indecorous and does nothing to move discovery forward.